CHARLES E. UPHAM v. THE DETROIT CITY RAILWAY COMPANY.

*Street-car companies—Negligence—Passenger riding upon platform of car.*

It is within the power of street railway companies to prohibit pas_sengers from riding upon the platforms of the cars, or to give notice that those who ride there must do so at their own risk, or to limit the number of passengers which each car shall carry, and require them to ride inside of the cars. Until they adopt some such regulations, and notify the public, it is but reasonable to hold them liable for injuries resulting from their own negligent acts, to their patrons, who are themselves in the exercise of reasonable care, whether riding upon the platforms or within the cars.

Error to Wayne. (Brevoort, J.) Argued January 22, 1891. Decided February 27, 1891.

Negligence case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*John G. Hawley*, for appellant, contended for the doctrine of the opinion.

*Brennan & Donnelly* and *Sidney T. Miller*, for defendant, contended as stated in the opinion, and—

1. It is the duty of the passenger, upon getting on board a streetcar, not only to use ordinary care and attention to protect himself while there, but also to place himself in *as* safe a position thereon as he is able to obtain; citing *Ward v. Railroad Co.*, 42 How. Pr. 292; *Clark v. Railroad Co.*, 36 N. Y. 138; *Ashbrook v. Railway Co.*, 18 Mo. App. 302.

GRANT, J.   Plaintiff was injured while riding upon one of the defendant's cars, under the following circumstances:

On September 17, 1890, in the evening, plaintiff, with his wife and children and some friends, had returned by boat from the exposition grounds, landing at the foot of Woodward avenue. A street-car was standing there, and many passengers from the boat rushed for the car. Plaintiff and his party went to the front of the car. He entered with the ladies and children of his party, while his friend Mr. Metcalf remained upon the front platform. Some of them secured seats, and the others stood up. After providing for them as well as he could, plaintiff returned to the front platform. The car was drawn by horses. Shortly after the car started it struck a switch, and plaintiff, who was standing with his back against the door, was thrown to the pavement, and severely injured.

Plaintiff brought this suit to recover damages, alleging that the defendant was guilty of negligence, in that it drove and propelled the car, without any notice or warning to plaintiff, at a great rate of speed, into, against, and around said switch. Upon the conclusion of the testimony defendant's counsel requested the court to instruct the jury that there could be no recovery by plaintiff. This the court declined to do, but said the cause would be submitted to the jury with the instruc-

tion that, if plaintiff could have remained in the car, he could not recover; but if it was so full that he could not get a place to go to in the car, then he could recover; and if there was room enough for him to remain in the car, when he went in, it was his duty to remain. After the judge had announced his conclusion upon the law, neither of the counsel desired to make any argument to the jury. The court thereupon instructed the jury, and in closing said to them:

"The question for you to decide is simply this: When he went into the car, could he have remained there? That is to say, was there room enough for him to remain there without going outside? If there was room enough to remain there, and he went outside voluntarily, then he cannot recover. If you should find that there was not room enough to remain there; that the car was full; that he could not stay there; that he was obliged to stand outside to get carriage,—then, gentlemen, you are to consider the damages he has suffered, and award him damages for loss of services, physician's bill, and for the injury that has befallen him."

Under these instructions, the jury found a verdict of no cause of action.

The question of fact submitted to the jury has been by them decided against the plaintiff. The jury could not well have found otherwise, for the plaintiff's own witnesses testified that there was plenty of standing room inside. Mrs. Metcalf testified that—

"There was no difficulty about persons standing up inside of the car, if they desired to; that is, there was room enough, if they preferred to stand inside to outside."

Miss Mary Metcalf testified that there was plenty of standing room inside when plaintiff went out. The car was supplied with straps for passengers to take hold of

when compelled to stand up. We must therefore determine the defendant's liability upon the fact found by the jury that plaintiff voluntarily left the car when there was room for him to ride within it, and voluntarily stood upon the platform.

Is the company liable under such circumstances for negligently driving its car? Defendant's counsel assert that plaintiff left a place of safety inside the car, and voluntarily chose one of danger upon the platform, and that, as his injury was due in part to the fact that he voluntarily took that position, he cannot recover; and that he took an unnecessary risk is evidenced by the fact that no one who was standing within the car was injured. They also assert that the law recognizes but two excuses for leaving a place of safety for one of danger:

1. Where a party, whether erroneously or not, acted under the reasonable impulse of fear produced by another;—

2. Where one has tried to save human life, when such effort did not amount to rashness;—

Neither of which this plaintiff can of course make. The answer to the question depends entirely, we think, upon whether or not it is *negligence per se* to ride upon the platform of a street-car when one may ride within. Whether one leaves the car, after entering, to ride upon the platform, or whether he steps upon the platform without entering, is of no consequence. His act is as voluntary in the one case as in the other, and the same rule must govern both. The record is entirely silent as to any regulations on the part of the defendant in this respect. But we cannot denude ourselves of the knowledge, which is alike common to all, that passengers are constantly riding upon these platforms with the tacit assent of the defendant, and without any protest, notice,

or regulation. We must therefore determine the question with the fact before us that this use of the platforms is permitted by the defendant without objection.

It is recognized as dangerous *per se* to ride upon the platforms of the ordinary steam railway cars. This is apparent to every one, and the difference in danger between riding there and upon the platforms of the street-car is too obvious to require comment. Authorities discussing that question afford no light in the determination of this. In the presence of the fact that passengers are permitted to ride upon these platforms constantly, can courts hold them to be dangerous *per se?* If the railway companies considered them dangerous places, would they not take some means to notify passengers not to ride there, or to inform them that they did so at their own risk? It is certainly reasonable to presume that they would. That they do not consider them dangerous is further apparent from the fact that, when their cars are full, they stop them to take on more passengers, and thus invite them to ride upon the platforms. This appears to be their constant custom. It is evident that the public do not consider these platforms places of danger from the fact of their constant use. It is therefore difficult to see upon what reason courts can hold that they are dangerous, and that persons who ride there assume all the risks, and thereby relieve such companies from all liability except for gross, willful, and wanton misconduct.

Under the facts shown by this record, the question of the negligence of the plaintiff, as well as of the defendant, belonged to the jury to determine, and should have been submitted to them under the proper instructions. Such, in my judgment, is the rule established by the clear weight of authority. *Nolan v. Railroad Co.*, 87 N.

Y. 63; *Maguire v. Railroad Co.*, 115 Mass. 239; *Railway Co. v. Walling*, 97 Penn. St. 55; *Meesel v. Railroad Co.*, 8 Allen, 234; *Burns v. Railway Co.*, 50 Mo. 139; *Railroad Co. v. Renz*, 55 Ga. 126; *Seigel v. Eisen*, 41 Cal. 109. This is not in conflict with the case of *Downey v. Hendrie*, 46 Mich. 498, where the plaintiff went through the car to the front platform and sat on the driving bar, a thin iron rail not exceeding an inch in thickness, from which he fell under the car. We have no doubt of the correctness of that decision.

It is within the power of street-railway companies to prohibit passengers from riding upon the platforms, or to give notice that those who ride there must do so at their own risk, or to limit the number of passengers which each car shall carry, and to require them to ride inside the cars. Until they adopt some such regulations, and notify the public, it is but reasonable to hold them liable for injuries, resulting from their own negligent acts, to their patrons, who are themselves in the exercise of reasonable care, whether riding upon the platforms or within the cars.

Judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.