## HART v. CAPITAL TRACTION CO.*

STREET RAILROADS; APPEAL AND ERROR; JUDICIAL NOTICE; CUSTOM AND USAGE; NEGLIGENCE; INSTRUCTIONS TO JURY.

1. Where, in a personal-injury case, the evidence was conflicting as to whether the plaintiff remained on the platform of defendant's street railway car from the time he boarded the car until he was thrown off when the car rounded a curve, as claimed by the defendant, or whether, as the plaintiff claimed, he left his seat and went on the platform just before the car reached the curve, with the intention of alighting from the car shortly thereafter, and there was a verdict for the defendant, it will be assumed on an appeal by the plaintiff that the jury found the fact to be as claimed by the defendant.

2. The court will take judicial notice of the custom of a street railway company not only to permit passengers to ride upon the platforms of its cars, but to permit its cars to become so crowded as to compel passengers to ride on the platforms. (Following *Capital Traction Co.* v. *Brown*, 29 App. D. C. 473, 12 L.R.A. (N.S.) 831, 10 A. & E. Ann. Cas. 813.)

3. A street railway company cannot create and permit a custom of hauling passengers on the platforms of its cars, and escape liability for accidents occurring through the operation of its cars with relation to such passengers; nor can it escape liability for such accidents by posting a notice on the cars that it is dangerous to ride on the platforms. (Following *Capital Traction Co.* v. *Brown*, supra.

---

*Street railroads; negligence.*—For presentation of cases on the question of riding on platform of street car as negligence, see notes to Capital Traction Co. v. Brown, 12 L.R.A. (N.S.) 831, and Lobner v. Metropolitan Street R. Co. 21 L.R.A. (N.S.) 972.

4. No presumption of negligence arises from the use by a passenger of the platform of a street railway car, even though there are seats to be had inside, so long as such use is not forbidden by a rule kept in active operation.

5. In a personal-injury action against a street railway company which permitted passengers to ride on the platforms of its cars, but in the cars of which were posted notices that it was dangerous to do so, by a passenger who, while riding on the platform of a car, was thrown therefrom as the car rounded a curve, while going at what was claimed to be an unusual speed, it is error for the trial court to instruct the jury that if they find there was a seat inside the car which the plaintiff might have occupied, the duty of the defendant to the plaintiff was performed if it ran its car around the curve at a rate of speed which was safe to seated passengers. It is a question for the jury, under such circumstances, whether the car was being run in the usual and customary manner. If so, the plaintiff assumed the risk of riding on the platform. (Citing *Sullivan* v. *Capital Traction Co.* 34 App. D. C. 358, and distinguishing *Capital Traction Co.* v. *Brown,* supra.)

6. A special instruction to the jury is not to be considered as having been impliedly approved by the court for future cases, where this court, on appeal by the party at whose instance the instruction was granted, and to whom it was highly favorable, affirmed the judgment in the case in which the instruction was given. (Citing *Capital Traction Co.* v. *Brown,* supra.)

No. 2117.   Submitted April 20, 1910.   Decided November 1, 1910.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia in an action to recover damages for personal injuries.       *Reversed.*

The COURT in the opinion stated the facts as follows:

This cause comes here on appeal from a judgment rendered in the supreme court of the District of Columbia in favor of appellee company, the Capital Traction Company, defendant below, in a suit brought to recover damages for injuries received by appellant, Abraham Hart, through the alleged negligence of appellee. For convenience, the parties will be referred

to as plaintiff and defendant in the relation they sustained in the court below.

It appears that about midnight on the 28th of February, 1908, the plaintiff entered and became a passenger on a car of the defendant on Seventh street, northwest, this city, for the purpose of going to his home near Eighteenth and V streets, northwest. The course of the car was north on Seventh street to U street, thence west on U street to a point where Florida avenue crosses the intersection of U and Eighteenth streets. At this point, there is a sharp curve as the track turns from U street, through Florida avenue, into Eighteenth street, where it takes a central course along said street.

The train on which plaintiff was riding was composed of a motor car and a trailer, both being closed cars. When the train moved around the curve, the plaintiff was standing upon the platform of the trailer, and as the car passed out of the curve onto the straight track, at a point on Eighteenth street north of the Florida avenue crossing, it swung or lurched, and the plaintiff was thrown from the platform to the street and injured. The evidence discloses that, at the time of the accident, the plaintiff was about seventy-seven years old, and was somewhat crippled in one of his arms. He was also familiar with the road and the custom of the defendant in operating its cars thereon, having traveled over the road almost daily for several years.

The plaintiff, in his declaration, after alleging the duty of the defendant to operate its cars "in a prudent and careful manner, and at a proper, safe, and lawful rate of speed, so as to avoid injuries to passengers," specifically charges that the defendant, on "the 28th day of February, 1908, neglected its duty in this behalf, in this: that it so carelessly and negligently operated one of its said trains of cars by running said train at an excessive rate of speed while said train was on and upon said curve of said tracks running from said U street around and into said 18th street, and while said train was leaving said curve and running along said 18th street, and otherwise, that the plaintiff, while a passenger, and while on said train, on the plat-

form of the rear car thereof, and preparing to alight therefrom at the next street corner at which said train would stop, to wit, at the corner of 18th and V streets, northwest, and while in the exercise of due care on his part, was there and then thrown violently to and upon the ground, so that he was seriously and permanently injured." Then follows the allegation as to damage. The defendant entered the general plea of not guilty, on which issue was joined. The case was tried to a jury, and a verdict rendered for defendant. From the judgment entered thereon, this appeal was taken.

*Mr. A. S. Worthington, Mr. Alexander Wolf,* and *Mr. C. L. Frailey* for the appellant.

*Mr. R. Ross Perry, Mr. R. Ross Perry, Jr.,* and *Mr. G. Thomas Dunlop* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It will be observed that the sole act of negligence charged against the defendant is that it ran the train in question at an excessive rate of speed around the curve onto Eighteenth street, and that, because of the excessive speed, when the car swerved from the curve onto the straight track, there was a jerk or lurch of the car, which threw the plaintiff from the platform to the street.

There is considerable conflict in the evidence as to just when the plaintiff went upon the platform. Some of the evidence tended to establish that he remained on the platform for the purpose of smoking from the time he boarded the car until the accident occurred. The evidence of other witnesses was to the effect that before or at the time the train entered the curve he left the car and went to the platform with the evident intention of getting off at V street, one block north of the curve. We do not consider this important. For the purposes of this inquiry, since the jury found for the defendant, we must assume that it accepted as true the testimony of the witnesses for the de-

fendant to the effect that plaintiff remained on the platform from the time he boarded the car. At least it is clear that he was standing on the platform at the time the train passed into and around the curve.

Plaintiff confronts us with sixteen separate assignments of error. We think, however, that the consideration of one will be sufficient to dispose of this appeal. At the request of counsel for defendant, the court, over the objection and exception of counsel for plaintiff, gave the following instruction: "The jury are instructed, as matter of law, that the duty which, on the occasion in question, the defendant, as a common carrier, owed to the plaintiff, as its passenger, and the duty which the plaintiff, as a passenger, owed to the defendant, as a common carrier, were reciprocal. It was the duty of the defendant, as a common carrier, not to negligently injure the plaintiff, its passenger, and it was the duty of the plaintiff, as a passenger, not to negligently expose himself to injury. The jury are further instructed as matter of law that if they shall find from the evidence that the plaintiff, at the time and place in question, occupied a seat within the body of one of the defendant's cars, and voluntarily left that seat while the said car was passing into, through, or out of the curve in the defendant's track in question, and proceeded out of said car and upon the platform of said car while the said car was running into, through, or out of the curve in question, and while upon said platform was thrown therefrom by a lurch or jerk of the car in question while passing into, through, or out of the curve in question, then the jury are instructed as matter of law that the defendant then and there owed to the plaintiff only the duty of propelling its said car into, through, and out of the curve in question at a rate of speed which was a proper rate of speed for the defendant to adopt for the safety of sitting-down passengers, and not for the safety of passengers standing upon the platform of said car. Therefore the jury are instructed that if they shall find from the evidence that at the time and place in question the plaintiff left his seat, as aforesaid, and proceeded to and stood upon the said platform, as aforesaid, and that the rate of speed which the defendant adopt-

ed in rounding the curve in question was such as fully accommodated the safety of the passengers who were seated, then the defendant did not owe the duty to the plaintiff of running slower in order to make him safe, just because the plaintiff chose to stand upon the platform. The only duty of the defendant in this regard was to then and there run its car according to the degree of speed which accommodated the safety of sitting passengers. And the jury are further instructed that if they shall find from the evidence that the plaintiff left his said seat and stood upon the platform as the said car was passing into, through, or out of the curve in question, then the plaintiff took the chances of being injured that were involved in the position that he stood in under any rate of speed that was sufficiently slow to accommodate the safety of seated passengers; and if the jury shall find from the evidence that at the time and place in question the rate of speed of the defendant's car was sufficiently slow to accommodate the safety of passengers sitting within the body of said car, then their verdict should be for the defendant."

The court, in explaining its refusal to grant the third prayer requested by counsel for plaintiff, explained its view of the law as expressed in the above instruction. The prayer refused and the remarks of the court relative thereto are as follows:

"3. If the jury find from the evidence that when the car upon which the plaintiff was riding approached the curve at Eighteenth and U streets, northwest, and while it was rounding that curve, the plaintiff was standing upon a platform of the car, and that the conductor in charge of the train at that time knew that the plaintiff was so standing upon the platform, then the jury are instructed that such knowledge on the part of the conductor was, as a matter of law, the knowledge of the defendant, and that even if the jury should be of the opinion that, in standing upon the platform of the car at that time, the plaintiff was not exercising the care of an ordinarily prudent man, still, in that case, the defendant, knowing that he was not inside the car, but was standing on the platform, was bound to use such care and diligence in rounding the curve as reasonable

prudence required towards a passenger standing upon the platform.

"The court: As I have already indicated, the general proposition contended for by counsel is well established; but there is in my judgment no room for its application to the contention here, for this reason: that the defendant owes a duty to others besides the individual passenger who choose to ride on the platform. The duty to preserve his safety might require it to operate its car at a rate of speed entirely too slow to accommodate the reasonable requirements of the majority of passengers riding inside the car. It owes to them the duty to transport them with reasonable despatch. This charge No. 3, as framed, requires the defendant company to ignore altogether the duty it owes to passengers who seat themselves within the car, and would put upon a defendant who was operating its car with such care as satisfies its duty towards passengers within the car a liability to anyone who was injured by the additional risk of standing outside a car which was operated with a degree of care that was safe concerning passengers within the car. The ruling is adhered to, and the charge refused."

The instruction given would undoubtedly be correct if it were the custom and rule of the defendant company to take on passengers only to the number which it could accommodate with seats. If that were the custom and rule of the company, then, if a passenger chose to leave his seat, and, for his own accommodation, take his position on the platform, the railway company would undoubtedly only be required to accommodate the speed of its cars to the safety of the seated passengers. An attempt was made in the present case to prove that, in the operation of street cars by the defendant company in the city of Washington, it is the custom to not only permit passengers to ride upon the platforms of the cars, but to permit the cars to be so crowded as to frequently compel passengers to ride there. The court refused to allow testimony to be offered on this point. We need not stop to consider this ruling, as we will take judicial cognizance of the existence of such a custom. As this court, in the case of *Capital Traction Co.* v. *Brown,* 29 App. D. C. 473,

12 L.R.A.(N.S.) 831, 10 A. & E. Ann. Cas. 813, referring to the custom established by the defendant company of carrying passengers on the platforms of its cars, said: "Their dereliction in failing to provide adequate accommodations for their passengers is so generally known that courts will take notice of it; for while theoretically justice is blind, practically justice is ever alert, watchful, and progressive. 'Courts,' says Greenleaf (1 Greenl. Ev. sec. 6) 'will generally take notice of whatever ought to be generally known within the limits of their jurisdiction.' That overcrowding street cars, strap hanging, and platform riding are daily indulged in and encouraged, no one with eyes will deny." This being the customary method of transporting passengers, the company cannot establish one rule of diligence as to the safety of seated passengers, another as to strap hangers, and still another as to persons riding on the platforms. The defendant cannot deliberately permit and create a custom of hauling passengers on the platforms of its cars, and escape liability for accidents occurring through their operation with relation to those particular passengers. Neither can the railway company escape the obligation imposed by the custom of posting a notice, as was done in this case, warning passengers that it is dangerous to ride on the platforms. The custom thus established is equivalent to an invitation to passengers to occupy and ride upon the platforms, and the mere posting of such a notice will not relieve it from liability. As was said in *Capital Traction Co.* v. *Brown,* supra: "As in this case, they usually solemnly post notices that it is dangerous to ride upon the platform, and then, day in and day out, deliberately ignore and neutralize such notices by overloading their cars, and tacitly consenting that passengers ride not only upon the platforms, but upon the running boards thereof. Even through a notice prohibiting passengers from riding upon the platform is posted, it will not make it negligence in law for a passenger to ride upon the platform, if the company daily ignores its own notice, and thereby establishes a custom inconsistent therewith. It will be observed that the notice in this case does not prohibit a passenger from riding upon the platform. It merely declares it

to be dangerous to do so. It is probably more dangerous to ride upon the platform than within the car, and a passenger, by taking such a position, assumes the risks which naturally ensue from that position. That is to say, if the company runs its cars in a prudent manner, and the passenger falls off and is injured, that is a risk he assumed by standing upon the platform; but if he has exercised due care (which is usually a question for the jury), and is injured because of the negligence of the company in running its car, the company cannot be heard to say that he has no right of action against it, when it is responsible for the practice which resulted in his injury."

As we have intimated, if the company had posted a notice prohibiting passengers from standing on the platform, and, in pursuance of its enforcement, furnished accommodation inside the cars at all times for all its passengers, while it could not prevent a passenger from riding on the platform, its duty to such passenger would be measured by its duty to the passengers inside the car.

Street car passengers in Washington may be divided, as relates to their safety in transportation, into three classes,—those occupying seats in the car, strap hangers and passengers occupying the aisles, and passengers standing on the platforms. Irrespective of the duty which the railway company owes the traveling public, this condition is one imposed by it. Regardless of the duty it may owe the seated passenger, occupying the position of greatest safety, to afford him rapid transit, his right must be surrendered to the duty which the company owes to the passenger on the platform, occupying, as he does, the most dangerous position, which the custom and usage of the company has established.

It is beside the case that, in this instance, the plaintiff was occupying the platform when there were vacant seats inside the car. He was riding in one of the customary places afforded by the company for hauling passengers, and he was entitled to rely upon the company's operating its cars in the usual and customary manner in which they are run with respect to the safety of all passengers. "No presumption of negligence arises from

the use of platforms on horse cars or electric street cars, even though there are seats to be had inside, so long as such use is not forbidden by a rule kept in active operation." (Shearm. & Redf. Neg. vol. 2, p. 971, citing *Upham* v. *Detroit City R. Co.*, 85 Mich. 12, 12 L.R.A. 129, 48 N. W. 199; *Sutherland* v. *Standard Life & Acci. Ins. Co.* 87 Iowa, 505, 54 N. W. 453; *Matz* v. *St. Paul City R. Co.* 52 Minn. 159, 53 N. W. 1071. The evidence discloses that plaintiff had been traveling over this line of road almost daily for several years. He was familiar with the customs of the company and the manner in which it ordinarily operated its cars. While there is no evidence that the cars in this instance were running at an illegal rate of speed, there is evidence that they were running at an unusual rate. The plaintiff, when he entered the car, was undoubtedly required to occupy the safest place afforded him,—in this instance, a seat. Instead, he took his position on the platform, and, in so doing, he assumed the additional risk attendant upon this position when the cars were being operated in the usual and customary manner. He was entitled to have the jury say whether they were so operated. If they were not, and the unusual condition was due to the negligence of defendant's employees, and such negligence was the proximate cause of the accident, he had a right to recover. The instruction here in question omits the essential element in this class of cases,—whether or not, at the time of the accident, the cars were being operated in the usual and customary manner. The jury was not permitted to pass upon this question. This was error.

In the case of *Sullivan* v. *Capital Traction Co.* 34 App. D. C. 358, considering the point here under consideration, where a passenger was injured while standing on the platform when there were vacant seats inside the car, the court said: "While it was not contributory negligence *per se* for him to take that position, yet he assumed all the additional risks attendant upon the dangerous place selected. The high care which a railroad company is required to exercise for the safety of its passengers can be invoked only when the passenger exercises reasonable care in the selection of the best and safest accommodation afforded. While the railroad company is powerless to prevent a

passenger from riding on the platform, and is required to exercise reasonable care for the safety of such passenger, the passenger who selects such a position, when ample accommodation is afforded inside of the car, assumes the risks attendant thereto in the customary and ordinary operation thereof." In that case, it will be observed that, while we held that a passenger riding on the platform assumes the additional risk attendant upon the dangerous position which he occupies, yet he has a right to rely upon the company's running its cars "in the customary and ordinary" manner in which they are operated with relation to the traveling public, and the customary method which the company has established for the transportation of its passengers. That question was fairly presented to the jury in the *Sullivan Case,* and resolved in favor of the railway company. Being purely a question of fact, the finding of the jury disposed of the right of the plaintiff to recover. But the same question in the case at bar was withheld from the jury by this instruction, which placed before them an improper measure of care due the plaintiff from the defendant. We must not be understood as holding that the railroad company is required to operate its cars with especial reference to the safety of the passenger in the seat or the one standing on the platform, but in the ordinary and customary manner, which experience has shown to best conserve the safety of the traveling public. The passenger is entitled to rely upon the car's being operated in such usual and customary manner, taking into consideration the methods of operation established by the general customs of the company.

It is urged that the instruction here under consideration was given by the court in the case of *Capital Traction Co.* v. *Brown,* 29 App. D. C. 473, 12 L.R.A.(N.S.) 831, 10 A. & E. Ann. Cas. 813, in which the judgment was affirmed by this court. It is sufficient to observe that, in that case, the jury found for the plaintiff Brown, and, inasmuch as the instruction was highly favorable to the railway company, it, being the appellant, could not complain. Therefore it became unnecessary for the court to consider the question before us on this appeal.

The judgment is reversed with costs, and a new trial ordered.

*Reversed.*