LARSKOWSKI *v.* DETROIT UNITED RAILWAY.

1. CARRIERS—NEGLIGENCE—PERSONAL INJURIES—PROXIMATE CAUSE.
    Where plaintiff's decedent was killed while riding on the platform of a street car that was crowded with passengers, and was jarred or crowded out of an open door, he was riding on the platform by permission, as it was necessarily contemplated that when the inside was filled to capacity passengers should stand on the platform, if taken on and accepted as such, and the swerve or jerk of the car, the lurching of the crowd against the decedent and open door may be said to have combined to cause the accident.

2. SAME—NEGLIGENCE—CONCURRING CAUSES.
    While the lurching of the car was the immediate cause of the injury, the accident was the result of the concurring

conditions, defendant's negligent failure to close the door, and the lurching, combined. Defendant was liable if it negligently left the door open and thereby aided in bringing about the death of its passenger.

3. SAME—CONTRIBUTORY NEGLIGENCE.

In the absence of any rule of the railway company, or ordinance requiring the doors to be closed on the car, since decedent was riding on the platform by permission, and by implied invitation, considering the crowded condition of the street car, he was not guilty of contributory negligence.

4. SAME—RIDING ON PLATFORM.

Carrying an excess of passengers and permitting them to stand on platform and steps is evidence of negligence.

5. SAME—CONTRIBUTORY NEGLIGENCE.

A person accepted as a passenger and required or permitted to ride on the platform of a street car is not as a matter of law negligent, relieving the company from liability except from gross or wilful negligence. The questions of negligence of defendant in leaving open the door and plaintiff's contributory negligence were for the jury. BROOKE, J., dissenting.

Error to Wayne; Codd, J. Submitted June 15, 1916. (Docket No. 139.) Decided September 27, 1916. Rehearing denied December 22, 1916.

Case by Bronislawa Larskowski, as administratrix of the estate of Joseph Larskowski, deceased, against the Detroit United Railway for the unlawful killing of plaintiff's decedent. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

*Charles Bowles,* for appellant.

*Corliss, Leete & Moody* and *A. B. Hall,* for appellee.

STEERE, J. This action was brought in the Wayne county circuit court by plaintiff as administratrix of Joseph Larskowski, her deceased husband, to recover

damages for his death which was caused by his falling from an electric street car being operated by defendant along Forest avenue, in the city of Detroit. Upon the trial a verdict for defendant was directed by the court at conclusion of plaintiff's evidence on the ground that she had failed to produce any proof of actionable negligence on defendant's part as a proximate cause of the accident complained of.

The accident occurred on the evening of September 22, 1913, while deceased was riding on a west-bound cross-town car, on Forest avenue, about midway between Grandy avenue and Chene street. He was a common laborer 51 years of age, in good health, a married man, regularly employed as watchman in a factory at the time of his death, and had taken the car near Mt. Elliott avenue about 6 o'clock that evening to return home from his day's work.

Plaintiff's testimony showed, or tended to show, that the traffic was heavy that evening and the car so crowded that it was very difficult, if not impossible, for deceased to get into the body of the car owing to the number then standing on the platform and within, described by one witness as "a jam," and he therefore rode on the back platform, which was also filled with standing passengers. The car which he boarded was of the kind called a "pay-as-you-enter car," with outside doors inclosing the entrance and exit which could be opened when the car was stopped to receive and discharge passengers and closed so as to prevent their getting on or off when the car was running. It was the custom to do this, but that evening the doors were not closed after the car left Grandy avenue, and about midway in the block a sudden jerk or swing of the car swayed or threw the other passengers standing close together on the rear platform against deceased, who was near the open door, and pushed or crowded him off, so that he fell upon the pavement, striking

violently on his head, causing spinal injuries and concussion of the brain, which resulted in his death.

Taking the testimony introduced by plaintiff as true and viewing it in the light most favorable to her contention, as is required in case of an adverse directed verdict, we think it tends to show that these three things, or conditions, combined to cause the accident —the sudden swerve or jerk of the car, the swing or lurching of the crowd against deceased, and the open door through which he was thrown, or fell. When the questions of negligence and responsibility are at issue the finer distinctions of proximate and remote cause do not always suffice as the test of liability, and sometimes confuse. It might, and probably could, truthfully be claimed that the proximate cause of deceased's death was his fall from the car or, more directly, concussion of the brain, or cerebral hemorrhage, or some other yet more occult physiological injury, but such conclusions, though in one aspect well founded, manifestly suggest no test for determining culpability.

The true test of legal responsibility in cases of this nature was briefly sounded without technical adornment, and approved by the court, in *Denver, etc., R. Co. v. Bedell,* 11 Colo. App. 139 (54 Pac. 280), a case in which the plaintiff while a passenger of defendant attempted, on account of the car being too cold, to close the door which had been left open, and owing to a sudden jerk or lurch of the train fell through the open door and was injured. In connection with a general verdict the jury by special verdict upon a question of fact answered that the negligence of defendant causing plaintiff's injuries was "leaving the door open." In sustaining this verdict the court there clearly stated the rule as follows:

"While the lurching of the car was the immediate cause of the injury, the plaintiff would not have been exposed to the danger of injury, except for the negli-

gent leaving open of the car doors. The accident was the result of the concurrence of the defendant's negligent failure to close the doors, and the lurching of the car; but if the former condition had not existed, the plaintiff would have been unharmed by the latter. A party through whose neglect another is exposed to, and sustains, injury, without any fault of his own, from some concurrent cause with which the negligent party may not be specially chargeable, is responsible for the injury. The injury is the direct and logical result of the negligence."

The general rule there applied to the open door is supported by authorities cited, and recognized in our own decisions. *Swick* v. *Cement Co.*, 147 Mich. 454, 462 (111 N. W. 110).

It is urged by defendants, however, that the rule of negligence which would apply to regular railroad trains running through the country is not the same in many particulars as that applicable to urban cars, or street car lines operated for comparatively short distances with frequent stops at street crossings; there was no proof made of any rule of the company or city ordinance requiring those doors to be closed on the car when running, in the absence of which there is no presumption of negligence from their being left open, and on the contrary it can fairly be contended that they were not provided for protection of people riding upon the platform, "as it is not contemplated that people shall stand on the platform, but rather to prevent accidents which so frequently occur in getting on and off cars where disputes are always arising as to whether the car was in motion when the passenger was getting on or off."

Deceased was riding upon the platform of this car by permission, and, if the car was crowded within as claimed, by implied invitation, of defendant. When the interior of the car was filled to capacity it was necessarily contemplated that passengers thereafter

received would stand on the platform. That street railways are common carriers of passengers and under their contract of safe carriage are bound to exercise a high degree of care, cannot be questioned.

There is abundant authority that for a street railway to carry passengers greatly in excess of the seating capacity of its cars and permit them to stand on the platforms and steps is evidence of negligence. *Pray* v. *Railway Co.*, 44 Neb. 167 (62 N. W. 447, 48 Am. St. Rep. 717), and cases there cited.

That a person accepted as a passenger and required or permitted to ride on the platform is not guilty of negligence *per se*, and does not relieve the company from all liability except for gross, wilful, and wanton misconduct by assuming all other risks, is held in *Upham* v. *Railway*, 85 Mich. 12 (48 N. W. 199, 12 L. R. A. 129).

But aside from all questions of operating overcrowded cars and permitting passengers to ride in dangerous positions on platforms, steps, running boards of open cars, etc., plaintiff was entitled to go to the jury on the question of leaving these doors open when the car was running, with passengers riding upon the platform. There was evidence that it was the custom to close them. To have them closed when running was manifestly a wise precaution and a factor of safety. That it might not be negligence to operate cars of a different design, without doors inclosing its platforms, is immaterial. This was a pay-as-you-enter car, equipped with such safety appliances, the use of which eliminated certain possible dangers. Under the circumstances of this case it can well be contended that it was the duty of defendant to use them as they could best be used to protect its passengers, and its failure to close these doors when running was negligence. *McMahon* v. *Railway & Light Co.*, 127 La. 544 (53 South. 857, 32 L. R. A. [N. S.] 346) ; *Augusta R.*

*Co.* v. *Glover*, 92 Ga. 132 (18 S. E. 406). In the latter case an electric car upon which a boy of 15 years rode as a passenger was equipped with gates on the side of the platform next to a parallel track, which were left open, when he alighted from the car upon that side and was struck and killed by a passing car on the other track. Having provided gates which, if closed, would have prevented him getting off on that side, the defendant neglected to use them. Of this the court well said:

"There may be no negligence whatever in failing to have gates   *   *   *   provided the equipment is sufficient to come up to the standard of extraordinary diligence.   *   *   *   But when a company has provided gates, due diligence might require it to use them, and failure to use them might be negligence in the given instance. Whether it would be or not is a question of fact for the jury.   *   *   *   And this is so irrespective of the particular object which the company had in view in procuring the gates, or of its own practice in their use.   *   *   *   Extraordinary diligence may require the carrier to use what he has, though it would not require him to have as much as he has provided."

We are satisfied for the reasons stated that plaintiff's testimony raised material issues of fact which she was entitled to have submitted to the jury under proper instructions. It follows that the judgment must be reversed, with costs, and the case remanded for a new trial.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, and PERSON, JJ., concurred with STEERE, J.

BROOKE, J. I am of opinion that no negligence was shown on the part of the defendant.