VAN GORDER *v.* PACKARD MOTORCAR CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW—FINDINGS OF INDUSTRIAL ACCIDENT BOARD—REVIEW.

Under the workmen's compensation law such portions of the findings of the industrial accident board as determine questions of fact, are final, if supported by competent testimony and no fraud is claimed, thus leaving open for

review by the Supreme Court only such legal conclusions as were arrived at by the board.

2. SAME—PERSONAL INJURIES—OUT OF AND IN COURSE OF EMPLOYMENT—LIABILITY OF MASTER.

In order to render an employer responsible, under the workmen's compensation act, there must be a concurrence of two elements, *first*, that the accident occurred in the course of the employment; and, *second*, that it arose out of it.[1]

3. SAME—INJURY CAUSED BY EPILEPTIC FIT—OUT OF EMPLOYMENT.

A plumber and steam fitter, who was standing on a properly constructed scaffold, a few feet from the floor of a building, and fell to the floor in an epileptic fit and was killed, did not suffer an injury arising out of his employment so as to render the master liable for compensation under the workmen's compensation act.

Certiorari to Industrial Accident Board. Submitted January 10, 1917. (Docket No. 80.) Decided March 30, 1917.

Mildred Van Gorder presented her claim for compensation against the Packard Motorcar Company for the death of her husband in respondent's employ. From an order awarding compensation, defendant brings certiorari. Reversed.

*Angell, Bodman & Turner,* for appellant.

*Douglas, Eaman & Barbour,* for appellee.

FELLOWS, J. The findings of the industrial accident board in this case are as follows:

"On the 27th of May, 1915, Frank Van Gorder entered the employ of the Packard Motorcar Company as a steam fitter and plumber. Frank Van Gorder was standing upon a scaffold about six feet in height engaged in his work as steam fitter. He gave some

[1]On construction and effect of workmen's compensation act, generally, see comprehensive note in L. R. A. 1916A, 23; particularly on the question of injuries arising out of and in the course of employment, see pages 40 and 232 of above note.

orders to his helper, and a little later fell from the platform to the floor, and his skull was fractured by the fall. The fall and concussion caused his death about 24 hours later. The evidence as to the cause of the fall is very meager, being to a large extent opinion evidence. There is opinion evidence that it was an epileptic fit, dizziness, or a fainting spell. On the whole the weight of the evidence tends to show that epilepsy was the cause of the fall, and the board so finds the proximate cause of death was the concussion and fracture of the skull caused by the fall. This resulted because of the place where Van Gorder was working, viz., on a scaffold some distance above the floor. Injury by falling from the scaffold was one of the dangers incident to the employment, and the fall from the scaffold caused the death."

Such portions of these findings as determine questions of fact are final, if supported by competent testimony, no fraud being claimed (*Redfield* v. *Insurance Co.*, 183 Mich. 633 [150 N. W. 362]), leaving open for review by us such legal conclusions as were arrived at by the board, including the question of whether upon the facts found by the board the injury was accidental, and whether the same arose out of and in the course of the employment (*Bell* v. *Hayes-Ionia Co.*, 192 Mich. 90 [158 N. W. 179]). No question is raised but that the findings concisely state the manner in which the accident occurred. Some question seems to be made as to the finding of epilepsy, but there is abundant testimony to sustain it. In addition to these findings, it should be stated that it was stipulated that deceased had only been in the employ of the defendant six hours, and it had no knowledge that he was subject to epileptic fits. There was undisputed testimony that a fracture of the skull might be and frequently is produced by one falling while walking on the street.

We therefore have before us the case of a servant whose fall was brought about by no strain, excite-

ment, or overexertion in the performance of his service, no overheated or unhealthy condition of place of employment bringing on a temporary faintness, no misstep due to contributory negligence, no unsafe place in which to work, no negligence of a fellow servant, but a fall due to an epileptic fit and a resultant fracture of the skull, producing death.

We cannot agree with the board that the "proximate cause" of the death, as a test of negligence or responsibility and as that term is understood in the law, was the concussion and fracture of the skull. To so hold would be practically to announce the doctrine that the injury itself was its proximate cause. We have recently had occasion to consider this question in the case of *Larskowski* v. *Railway*, 193 Mich. 409 (159 N. W. 530), and there said:

"When the questions of negligence and responsibility are at issue, the finer distinctions of proximate and remote cause do not always suffice as the test of liability, and sometimes confuse. It might, and probably could, truthfully be claimed that the proximate cause of deceased's death was his fall from the car, or, more directly, concussion of the brain, or cerebral hemorrhage, or some other yet more occult physiological injury, but such conclusions, though in one aspect well founded, manifestly suggest no test for determining culpability."

It is within the province of the court and its duty to determine whether, upon the facts found, the injury arose out of and in the course of the employment. There is no question but that decedent received his injury in the course of the employment. We therefore pass to the controlling question in the case, viz.: Did the injury arise out of the employment? Was it an incident of the employment, due to it, or proceeding from it? Was there a causal connection between the injury and the employment?

The case has been ably briefed, and the cases cited

have been selected with great care. The case most relied upon by the claimant is that of *Wilkes* (or *Wicks*) v. *Dowell & Co.*, 7 W. C. C. 14, decided in 1905. In this case the facts were as follows: The workman was employed in unloading coal from a ship by means of a bucket attached to a hydraulic crane. His duty was to stand upon a stage, which was made so that he could look down the hold, and to give signals to the craneman and to guide, by means of a long staff with a hook, the bucket which was raised from and lowered into the hold by the crane. He was subject to fits, and while standing on the stage engaged in his work he was seized with a fit and fell into the hold and was severely injured. The county court judge held that the injuries sustained by the workman were not caused by an accident arising out of his employment. Upon review this holding was reversed. The English statute contains the same provision as does ours, and we are unable to distinguish this case in principle from the instant case or the two later English cases to which we shall refer, with the one exception which we do not regard as controlling, but which might have been so regarded by the English court, as we shall presently see, and that is the fact that the workman in the *Wicks Case* was in a place of extreme hazard, styled by Collins, M. R., as "necessary proximity to the precipice." If this case should be followed the board was correct. But the force of this case is materially minimized by two later holdings of the English court which are incompatible with it, *Butler* v. *Burton-On-Trent Union* [1912], 5 B. W. C. C. 355, and *Nash* v. *The Rangatira* [1914], 3 K. B. 978. In the *Butler Case* the deceased was master of a workhouse. While sitting at the top of some stairs leading up to his private rooms he was seized with a fit of coughing which made him giddy. He fell down the stairs, receiving an injury resulting

in death. He was at the time suffering from tubercular trouble. It was held that the injury did not arise out of his employment, and that there was no liability, although it arose while 'deceased was in the course of the employment; that both must concur. The *Nash Case* arose under the following circumstances: Deceased went on shore with leave while the Rangatira was lying by the quay. He returned intoxicated about 11:15 p. m. and attempted to mount the gangway, which was properly constructed, and when about halfway up let go with one hand, and, swinging around, fell over the other rope onto the quay, receiving injuries from which he died the next day. It was held that the man had returned and was in the sphere or ambit of his employment, and therefore in the course of his employment, but that the accident was caused by his condition, and hence the injury did not arise out of his employment. The *Butler* and *Nash Cases* will therefore be seen not to be in accord with the earlier case of *Wicks* v. *Dowell & Co., supra.* In the *Wicks Case* the deceased fell in an epileptic fit; in the *Butler Case* the deceased fell in a fit of coughing producing giddiness; in the *Nash Case* the deceased fell while his mental faculties were dulled by intoxication. Upon principle we cannot distinguish these cases, and therefore feel that the strength of the *Wicks Case* is materially lessened, if not overruled, by the two later cases.

Counsel for claimant also cites *Fennah* v. *Railway,* 4 B. W. C. C. 440. In this case deceased, an engine driver, was tightening a nut in the engine. He had one knee on the engine frame and one foot on the platform. No one saw him fall, but he was next seen on the permanent way between the engine and platform in agony, and died within five minutes. While he had on at least three different occasions collapsed in a faint and lain unconscious for some minutes, he

195 Mich.—38.

had been examined by the company's physician a few days before and presumably found physically fit. It was held that the injury arose out of the employment and the company was liable, but the court expressly stated:

"Here the fall was caused by the work he was legitimately employed in, and the fall to the permanent way was a great shock, and would, Dr. Coen says, be sufficient to cause death."

Counsel also cites *Clover, Clayton & Co.* v. *Hughes,* 3 B. W. C. C. 275. This case belongs to that class of cases of which our case of *Schroetke* v. *Jackson-Church Co.,* 193 Mich. 616 (160 N. W. 383), is one, and we there cited and considered this case and repetition here is unnecessary.

*Driscoll* v. *Express Co.,* 73 Massachusetts Industrial Accident Board Cases, is based entirely on the *Wicks Case,* and we are unable to find that it has been reviewed by the Massachusetts courts.

The opinion of the solicitor of the department of labor in *Re Claim E. B. Clements* (Op. S. Dept. of Labor, 190) had under consideration the Federal act, which does not contain the provision of the Michigan act now under consideration, and this was clearly pointed out in the opinion. The question there was whether the injury was received "in the course of employment," and there, as well as here, it was held that it was. But our statute requires something further; the injury must arise *"out of"* the employment, and it is not sufficient that it arose during the employment, if it arose out of something else. We have examined with care the other cases cited by counsel, those from other jurisdictions being cases dealing with policies of accident insurance. By analogy they apply, but we do not regard them as persuasive here.

In addition to the authorities cited by counsel, we should consider the Rhode Island case of *Carroll* v.

*Stables Co.,* 38 R. I. 421 (96 Atl. 208, L. R. A. 1916D,
154). In this case Carroll was a hack driver in the
employ of respondent, which had elected to become
subject to the workmen's compensation act. While
so engaged he received an injury by falling from his
seat on the hack driven by him. There was evidence
that the fall was due to dizziness or unconsciousness
induced by a disease from which he was suffering.
The court cites with approval the *Wicks Case,* and
must be taken on the whole as sustaining the claim-
ant's position, but the court also finds evidence in the
case of a lurch of the hack Carroll was driving, and
said:

"There is at least as much evidence that the fall
was due to an unexpected and accidental lurch of the
hack into the gutter and towards or against the curb-
stone as that it was due to dizziness or unconscious-
ness induced by disease. It seems to this court that
the decision and the decree appealed from embody a
conclusive finding of fact that dizziness or unconscious-
ness was not the sole cause of the fall, and that there
was evidence from which the justice could find, as he
did, that the accident arose out of the employment."

We have already referred to the *Butler* and *Nash
Cases,* in which the English court reach a result op-
posed to the *Wicks Case.* An examination of the Eng-
lish cases demonstrates that these two cases find sup-
port in the great weight of authority in that country.
The English court in several cases lays great stress on
the fact that the injury must arise *out of* the employ-
ment.

In the case of *Frith* v. *Louisianan,* 5 B. W. C. C.
410, which was cited with approval in the *Nash Case,*
the deceased met his death while in the ambit of his
employment, and therefore met one of the conditions
of the statute, but his mind was wholly incapacitated,
due to intoxication. Cozens-Hardy, M. R., who sat

in the *Wicks Case,* in deciding the case asks the question:

"Assume that he is in the course of his employment, the question then is: Was this an injury by accident arising out of the employment, or an accident arising solely by reason of the intoxication of this man?"

After considering it he answers:

"The injury was not due to an accident arising out of his employment, but due solely to hopeless drunkenness."

*Hawkins* v. *Coal Co.,* 4 B. W. C. C. 178, was a case where deceased met his death while in the employ of the coal company. He had worked in the morning helping to push empty trucks up an incline and tumble them off the rails and had then begun the work of shaping props. While engaged at the latter work he was taken ill and had to stop. After resting he went home. He died the same day of *angina pectoris.* His heart had for a long time been in a bad condition. The evidence left the question of whether the death was due to a previous diseased condition or causes arising out of the employment conjectural, and it was held that the dependents could not recover. To the same effect is *Barnabas* v. *Colliery Co.,* 4 B. W. C. C. 119.

*Rodger* v. *School Board,* 5 B. W. C. C. 547, was a case where the school janitor was sent to carry a message about a mile and a half away. The day was hot, and on the return he was seen to stop, and, facing the wall of a house, leaned his hands against it, then fell backwards, striking his head violently on a stone pavement, receiving injuries from which he later died. It must be apparent from this statement that he was seized with a temporary faintness. He was at the time in the course of his employment, but it was held that the injury did not arise out of his employment, and

therefore there was no liability. The Lord President takes occasion to refer to the *Wicks Case* as belonging to that class of cases where the place of labor is "unusually dangerous." Further authority under the English workmen's compensation acts, which are similar to ours, for the proposition that the injury must arise *out of* the employment, and not from some other cause, even though in the course of employment, will be found in *Sheldon* v. *Needham,* 7 B. W. C. C. 471; *Murphy & Sandwith* v. *Cooney,* 7 B. W. C. C. 962; *Thackway* v. *Connelly & Sons,* 3 B. W. C. C. 37.

In the instant case the deceased was performing the ordinary services of his trade, that of a plumber and steam fitter. He was standing on a scaffold a few feet from the floor. There is no claim that the scaffold was improperly constructed or in any way unsuitable for the service. Due to no conditions arising out of his employment, but solely to his predisposition to epilepsy, of which his employer had no notice, he fell from the scaffold, receiving an injury from which death resulted. The fall was caused and caused only by the epileptic fit. The fit was the direct and only cause of his injury. We do not think it would be seriously contended that had he fallen in an epileptic fit while standing on the floor and received the injury he did that the injury arose out of the employment, and that the defendant was liable. *Collins* v. *Gas Co.,* 171 App. Div. 381 (156 N. Y. Supp. 957). The height from which he fell, here only a short distance, could not change the liability for the injury. The most that can be said is that the height from which deceased fell may have aggravated the extent of the injury. A person falling a greater distance may be more seriously injured than one falling a lesser distance; but it does not change the question of responsibility, of liability. The distance of the fall might contribute to the extent of the injury, but it was not a contributory

cause to the fall. When the deceased was seized with the epileptic fit he would have fallen, no matter where he was, and the employer cannot be held responsible because that unfortunate seizure occurred when the workman was on a scaffold, a few feet from the floor.

Our own cases clearly recognize the rule that in order to render the employer responsible there must be·a concurrence of the two elements, viz.: (1) That the accident occurred in the course of the employment; and (2) that it arose out of it. If it did not arise out of the employment, but arose out of something else, the employer is not liable. *McCoy* v. *Screw Co.*, 180 Mich. 454 (147 N. W. 572, L. R. A. 1916A, 323) ; *Klawinski* v. *Railway Co.*, 185 Mich. 643 (152 N. W. 213, L. R. A. 1916A, 342). We must adhere to this construction of the statute, if any force or effect be given to the expression arising "out of" the employment. The legislature has so written the law and adopted the language of the English statute with the construction there placed upon it.

This unfortunate man fell to his death when in an epileptic fit, which did not arise out of his employment and for which his employer was not responsible. We are therefore constrained to reverse the case.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.