TARPPER *v.* WESTON-MOTT CO.

1. MASTER AND SERVANT — WORKMEN'S COMPENSATION ACT — PERSONAL INJURIES—"OUT OF EMPLOYMENT."

To entitle an injured employee to compensation under the workmen's compensation act, the injury must arise out of, as well as in the course of, his employment.

2. SAME — INJURY ARISING OUT OF EMPLOYMENT — LIABILITY OF MASTER.

An injury to an employee, caused by his fellow employees injecting compressed air into his rectum in a spirit of fun, did not arise out of his employment so as to render the master liable under the workmen's compensation act.

Certiorari to Industrial Accident Board.  Submitted January 15, 1918.  (Docket No. 87.)  Decided March 27, 1918.

Michael Tarpper presented his claim for compensation against the Weston-Mott Company for injuries received in defendant's employ.  From an order awarding compensation, defendant and the New England Equitable Insurance Company, insurer, bring certiorari.  Reversed.

*Frank J. Riggs,* for app⌐llants.

*Samuel G. Thompson,* for appellee.

BROOKE, J.  Claimant at the time of his injury was employed by respondent as helper to a riveter.  At the time of his injury, claimant and his riveter were engaged in assembling housings for rear axles.  It was his duty to put the rivets in the holes that were to be riveted and to hold the case steady on the block while the riveter applied a hammer operated by compressed air to the rivets and so finished the job.  Claimant performed no duty which required him either to use or come in contact with the compressed air system or hose.  While the claimant was engaged in holding a case upon the block and his riveter was applying the hammer, a fellow employee named Congdon, either innocently or maliciously, committed an assault upon the claimant which he, Congdon, describes in the following manner:

"I walked over to where Mike Tarpper was working and put my arm around his waist.  There was an air hose three or four feet away and in the *spirit of fun* I took hold of the hose which was dead (that is, no air was on), and placed it against his side, and in his moving around the hose slipped down until it got against his rectum.  I don't know how long I held it there, but in the meantime a man by the name of

Thompson turned the air on. I did not know any air had been turned on, that is I could not tell by the hose, or by any other means that there was air on. I know that Thompson was standing on the block by the air valve where it is turned on when wanted. Tarpper sank down on the floor and stated that I had hurt him where I held my hand on his side. We all had a habit of fooling around at different times. There was absolutely no bad feelings between myself and Tarpper, or between him and the rest of the men in our department."

As a result of the introduction of the compressed air into claimant's rectum, the rectum was ruptured for a distance of five inches. An abdominal operation was performed very soon thereafter and as soon as the abdomen was opened the compressed air escaped. The rectum was repaired and plaintiff made, according to the record, a somewhat indifferent recovery. A claim for compensation was made and denied by the committee on arbitration. Upon review by the industrial accident board, the order of the committee on arbitration denying compensation was reversed and compensation was awarded. The board found:

"(a) That the applicant received an accidental injury arising out of and in the course of his employment by the respondent employer.

"(b) That the accident was not the result of horseplay or skylarking, or practical joking.

"(c) That at the time the applicant was injured he was attending strictly to his work, and was in such a position that he could not see anything that was going on around and about him."

We have examined this record with care and are unable to find a scintilla of testimony tending to support the second finding of the board. Claimant himself on the way to the doctor's office stated that: "They aired me with the air." The only witness sworn who knew exactly what occurred was Congdon who held the hose in position while Thompson turned on the air. This

he says he did in a "spirit of fun," and adds, "We all had a habit of fooling around at different times." The third finding of the board is amply supported by the proofs. At the moment of the assault claimant was busily engaged about his ordinary work and did not see what was happening. That claimant suffered his injury in the course of his employment is clear, but that it arose out of his employment is denied by respondent. In *Federal Rubber Manfg. Co.* v. *Havolic*, 162 Wis. 341, the supreme court of Wisconsin had under consideration a case identical in principle and nearly so upon the facts with the case at bar. The court there said:

"This court has endeavored to give to the workmen's compensation act a broad and enlightened construction, to the end that it may accomplish to the fullest extent its beneficent purpose. It is to be remembered, however, that this purpose was to compensate for injuries resulting from one class of accidents only, namely, industrial accidents. There is liability only 'where at the time of the accident, the employee is performing service growing out of and incidental to his employment.' Wis. Stat. 1915, § 2394-3, subd. 2. It was held in *Hoenig* v. *Industrial Com.*, 159 Wis. 646, after full argument and consideration, that the injuries covered by the act are such as 'are incidental to and grow out of the employment.' This seems practically to mean the same thing as the expression in the English compensation act, 'arising out of and in the course of the employment.' Under the English act it has been held that accidents resulting from 'larking' or playing with machinery cannot be held to arise out of the employment. *Furniss* v. *Gartside & Co.*, 3 B. W. C. C. 411; *Cole* v. *Evans*, 4 B. W. C. C. 138.

"The Massachuetts act provides compensation for an injury which arises 'out of' the employment, and it was well said by the Massachusetts supreme court in *McNicol's Case*, 215 Mass. 497:

" 'The causative danger must be peculiar to the work, and not common to the neighborhood. It must be incidental to the

character of the business, and not independent of the relation of master and servant.  It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.'

"'* * * How injuries resulting from such inexcusable and revolting horseplay as this can be said to be incidental to the employment we are unable to understand.  It is equally impossible to understand how it can be said that the claimant at the time of the accident was performing service 'growing out of and incidental to his employment.'"

That the injury suffered by the employee must arise out of the employment as well as in the course of the employment is well settled by our own decisions. *McCoy* v. *Screw Co.,* 180 Mich. 454; *Klawinski* v. *Railway Co.,* 185 Mich. 643; *Clark* v. *Clark,* 189 Mich. 652; *VanGorder* v. *Motorcar Co.,* 195 Mich. 588.

Upon the question of the employer's liability under acts similar in character to our own for injuries sustained by employees while engaged in playing or fooling with each other, see *De Filippis* v. *Falkenberg,* 170 N. Y. App. Div. 153, where the English authorities are reviewed.  See, also, *Hulley* v. *Moosbrugger,* 88 N. J. Law, 161, and, also, *Coronado Beach Co.* v. *Pillsbury,* 172 Cal. 682.

The award is reversed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.