DENEEN *v.* HOUGHTON COUNTY STREET-RAILWAY CO.

1. DISMISSAL AND NONSUIT—VOLUNTARY NONSUIT—PROPRIETY.

   The practice of allowing a plaintiff to submit to a voluntary nonsuit at any time before the jury have retired, even after the judge has indicated his purpose to direct a verdict for defendant, has the sanction of long usage, and is a protection against defeat through surprise, disappointment, or technicalities which otherwise might defeat justice.

2. STREET RAILROADS—PERSONAL INJURIES—CROSSING ACCIDENT—NEGLIGENCE—EVIDENCE—SUFFICIENCY.

   In an action against a street-railroad company for a personal injury inflicted in a crossing accident, evidence tending to show fast running and failure to decrease the speed of the car before plaintiff was struck, together with testimony by plaintiff that he heard no gong sounded, *held*, sufficient to carry the case to the jury on the question of defendant's negligence.

3. SAME—CONTRIBUTORY NEGLIGENCE— FAILURE TO OBSERVE APPROACH OF CAR.

   Failure to observe the approach of a street car until it was within 100 feet of the crossing, when it might have been seen much farther away, is not conclusive of plaintiff's negligence, the speed of the car and the necessity of looking in the opposite direction first entering into the question, and making it one for the jury.

4. SAME—ATTEMPT TO CROSS AFTER DISCOVERY OF CAR.

   An attempt to cross a street-car track after discovery of a car 100 feet away, instead of trying to back one's team away, is not necessarily negligent, but the question depends on the circumstances and is one for the jury.

5. SAME — NEGLIGENCE — SPEED ORDINANCE — APPLICABILITY TO AFTER-ACQUIRED TERRITORY.

   A municipal ordinance regulating the speed of street-railroad cars is a police regulation, and applies to after-acquired territory in which a street railroad is in operation under a grant from another source, and affords a sufficient basis for an action for a personal injury due to its breach.

6. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE — ACTS IN EMERGEN-
   CIES—INSTRUCTIONS—PROPRIETY.

    Where the question of plaintiff's contributory negligence arose
    in an action against a street-railroad company for a personal
    injury inflicted at a crossing, it appearing that plaintiff at-
    tempted to cross after discovering the approaching car in-
    stead of backing his horses away, it was not error to instruct
    the jury that a plaintiff, in attempting to take what appears
    to be the safest course to avoid a discovered danger, is not
    necessarily guilty of negligence, although he does not use the
    best of judgment.

7. DAMAGES—PERSONAL INJURY — PERMANENT INJURY — INSTRUC-
   TIONS—PROPRIETY.

    Where, in a personal injury case, there is no testimony that in-
    dicates a probability that the injury will be permanent, the
    giving of an instruction that permits the jury to find that
    the injury is permanent and to base damages thereon is
    harmful.

Error to Houghton; Streeter, J. Submitted June 11,
1907. (Docket No. 64.) Decided December 10, 1907.

Case by John Deneen against the Houghton County
Street-Railway Company for personal injuries. There
was judgment for plaintiff, and defendant brings error.
Reversed.

*Chadbourne & Rees*, for appellant.

*Burritt & Burritt*, for appellee.

HOOKER, J. The undisputed evidence in this cause
shows that, when 28 feet distant from the rail of defend-
ant's car track, the plaintiff could have seen a car dis-
tant 450 feet to the northwest of the crossing in front of
him. At that time his horses' heads would have been 11
feet from the rail. He testified that he looked and lis-
tened all of the way from a point 60 feet from the track,
yet did not see a car until his horses' heads were within
two feet of the track, when he saw it about a hundred
feet away. He then whipped up his horses but the sleigh

was struck and he was injured.    A verdict was rendered for the plaintiff and defendant has appealed.

The important points raised are:

1. Should a verdict have been directed for the defendant?

2. Was it error to admit an ordinance of the village of Hancock?

3. Conduct of counsel.

4. Errors in the charge.

On the trial of the former action for the same cause, the defendant moved at the close of the evidence that a verdict be directed for the defendant.    The point was argued and the court indicated that while there was evidence of defendant's negligence, he thought that plaintiff was guilty of contributory negligence.    He began to address the jury to that effect when the plaintiff submitted to a nonsuit.    It is contended that the judgment rendered thereon is a bar to this action and it was pleaded in bar. We understand that at common law a plaintiff may submit to a voluntary nonsuit at any time before verdict.    The practice has been modified by Cir. Ct. Rule 14 *d*.    Apparently counsel do not insist upon the point but suggest a rule precluding this practice.    This is a practice which has the sanction of long usage and is a protection against defeat through surprise, disappointment, or technicalities which otherwise might defeat justice.    We see no good reason for changing the rule.

Should a verdict in defendant's favor have been directed?    Counsel base such claim upon two grounds: (1) That there was no evidence indicating defendant's negligence; (2) that contributory negligence was conclusively shown.

The accident occurred at the junction of two streets crossing at right angles, both car and plaintiff's team approaching each other on down grades.    The declaration alleged various acts of negligence, such as running too fast, failure to give signals, etc.    There was evidence tending to show fast running and a failure to decrease speed before plaintiff's sleigh was struck.    He was asked

if any gong was sounded and replied: "*No, sir, I didn't hear any.*" This was some evidence tending to show the failure to give the signal, plaintiff being close by, and where he could and naturally should have heard them if given. There was evidence sufficient to carry the case to the jury upon the question of the defendant's negligence.

Contributory Negligence: The plaintiff did not get an unobstructed view of the track for 450 feet until his team was within 11 feet of the rail, when he saw the car about 100 feet away. It is manifest that from his surroundings he must have been able to see a car much more than a hundred feet away before his horses were so near the track. A jury might well say that a failure to see the car earlier was sufficient evidence of his negligence. There are, however, several other things which enter into the question, such as the speed at which he and the car were going, and the necessity for his looking to the east before looking to the west, which may have been justified by more difficulty in ascertaining whether a car was near from that direction than from the west. Again, after seeing the car about a hundred feet away, he determined to try to get across. We cannot say that it was negligent to do that instead of trying to back his team away from the car. It all depends upon the circumstances, and the question was one for the jury. One better take a serious chance of injury than to drive immediately in front of a car with the certainty of being struck; but, as such certainty diminishes by reason of increased distance and apparent opportunity to cross safely, the negligence of an attempt to cross is not so clear, especially where the character of the team and surroundings make any other course necessarily hazardous. This was a question for the jury.

Counsel for defendant assert, however, that it was error to allow the plaintiff's counsel to introduce an ordinance of the village of Hancock restricting defendant's rights to run its cars faster than eight miles an hour. This ordinance was one passed by the village council some years before granting a franchise to the defendant to build its

road in the village of Hancock upon certain streets. The following is a portion of the ordinance:

"Said cars shall after sunset be provided with proper signal lights, shall be properly heated in cold weather, and shall be run at a rate of speed not exceeding eight (8) miles an hour within the limits of said village."

The place where the plaintiff was injured was not within the village at the time the grant was made, and defendant acquired its right to construct and operate its road at that point from other sources. Defendant's counsel do not question the authority of the village authorities to make ordinances regulating speed at this point, but claim that they have not done so, and that the ordinance in question did not become operative as to that locality by the subsequent extension of the village limits; in other words, their contention is that the defendant might lawfully operate its road in compliance with its vested right, acquired from the outlying township, subject to the obligation of complying with such police regulation as should be made by the village after acquiring jurisdiction of this territory. Its grant was made under 2 Comp. Laws, § 6446, which provides:

"Such company may extend, construct, etc., their road, in and along the streets or highways of any township adjacent to said city or village, upon such terms and conditions as may be agreed upon by the company and the township board of the township."

It is the general rule that a general ordinance applies to all territory within the corporate limits at the time of its passage, and becomes effective in additional territory when such is attached. *St. Louis Gaslight Co.* v. *City of St. Louis*, 46 Mo. 121; 6 Current Law, p. 718; 21 Am. & Eng. Enc. Law (2d Ed.), p. 996. See *Virginia* v. *Smith*, 1 Cranch C. C. (U. S.) 47, as to an ordinance prohibiting slaughter houses, and *Town of Toledo* v. *Edens*, 59 Iowa, 352, as to regulation of liquor traffic, where the court said:

"If an ordinance be enacted and afterward the city limits be extended by adding thereto adjacent territory, no one would contend that a new ordinance must be passed in order to be operative in the newly-acquired territory."

See, also, *Swift* v. *Klein*, 163 Ill. 274; *Covington* v. *City of East St. Louis*, 78 Ill. 548; 1 Dillon on Municipal Corporations (4th Ed.), § 185, and note on page 268; McQuillin on Municipal Ordinances, § 40 et seq., and note, and § 397.

We are of the opinion that this provision of the ordinance was intended for the protection of the citizens, and that it was in the nature of a police regulation, although it may also have aided in establishing contractual relations (see McQuillin on Municipal Ordinances, § 11), and that actions for personal injuries due to its breach, and alleged as such (as in this declaration), may be brought by the injured person. See McQuillin on Municipal Ordinances, § 40, and note. Manifestly, then, the ordinance was admissible. McQuillin on Municipal Ordinances, § 40, note 9, and § 397; *Flater* v. *Fey*, 70 Mich. 644; *Haines* v. *Railway Co.*, 129 Mich. 475; *Iamurri* v. *Gas Co.*, 148 Mich. 27; *Blickley* v. *Luce's Estate*, 148 Mich. 233.

It was not error to instruct the jury that a plaintiff in attempting to take what appears to be the safest course to avoid a discovered danger is not necessarily guilty of negligence, although he does not use the best of judgment.

The court instructed the jury as follows:

"In considering the question of damages, you are also to determine from the evidence whether the plaintiff has entirely recovered from his injuries or whether his injuries are permanent. And if you find that he has not entirely recovered from his injuries, or that his injuries are permanent, and that he will suffer total or partial loss of time in the future, and mental and physical pain in the future, you should in such case award such additional amount as you find from the evidence he should recover

to fully compensate him for loss of time and what he will suffer in the future."

There was no testimony in the case that indicated a probability that the injury would be permanent, though there was testimony that there was a possibility that he might never entirely recover. While two physicians so testified, they united also in the opinion that there would probably be complete recovery in a period of from two months to two or three years. To leave the jury the opportunity of finding that the injury was permanent and basing damages thereon was harmful. The evidence did not tend to prove that the injury was permanent, and the instruction mentioned should not have been given.

We need not consider other questions as they may not arise upon another trial.

We are constrained to reverse the judgment. A new trial is ordered.

McALVAY, C. J., and CARPENTER, GRANT, and MOORE, JJ., concurred.