## SPRENG *v.* DETROIT UNITED RAILWAY.

1. APPEAL AND ERROR— DIRECTED VERDICT—SCOPE OF REVIEW.
    In the case of an adverse directed verdict, the testimony introduced by the plaintiff should be taken as true and treated in the light most favorable to plaintiff.

2. STREET RAILWAYS—HIGHWAYS AND STREETS—RIGHTS OF PEDESTRIANS—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.
    It must be presumed that a very large and heavy woman 86 years of age thinks that she has time to cross street car tracks near the middle of a block where, at the time she steps off the curb, she observes a car 300 feet away beyond a street intersection at which point a prospective passenger is waiting for it, although the car does not stop for the passenger and comes on at a high rate of speed.

3. SAME.

A pedestrian who is 86 years of age and is very heavy, has the right, in the exercise of due care, considering her age and clumsiness, to travel across a street near her home on which a street railroad runs.

4. SAME — NEGLIGENCE — EVIDENCE — SUFFICIENCY — QUESTION FOR JURY.

In an action for the death of a pedestrian by a street car while crossing a street near the middle of a block, evidence *held*, sufficient to go to the jury on the questions of negligence and contributory negligence. BROOKE, J., dissenting.

Error to Wayne; Hosmer, J. Submitted June 8, 1917. (Docket No. 24.) Decided July 26, 1917.

Case by Julia Spreng, administratrix of the estate of Frances Spreng, deceased, against the Detroit United Railway for the negligent killing of plaintiff's intestate. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

*Lucking, Helfman, Lucking & Hanlon,* for appellant.

*Corliss, Leete & Moody* and *William G. Fitzpatrick,* for appellee.

MOORE, J. This case is brought under the survival act to recover damages for injuries received by Mrs. Frances Spreng, on the afternoon of the 8th day of June, 1914, resulting in her death on the 14th day of October following. The trial judge held that while he was "not prepared to say that the motorman in charge of the car was not guilty of negligence," yet he believed deceased was guilty of contributory negligence, and directed a verdict for defendant. The case is brought here by writ of error.

The sole question is whether the case should have been submitted to the jury under proper instructions. It is well settled that in the case of an adverse directed

verdict, the testimony introduced by the plaintiff should be taken as true and viewed in the light most favorable to plaintiff. *Larskowski* v. *Railway,* 193 Mich. 409 (159 N. W. 530) ; *Putnam* v. *Railway,* 164 Mich. 342 (129 N. W. 860) ; *Erdman* v. *Railway,* 175 Mich. 691 (141 N. W. 542).

Mrs. Spreng was struck by a south-bound street car on Oakland avenue, between Marston and Mt. Vernon avenues in the city of Detroit. The defendant operates double and parallel tracks running in a southerly and northerly direction on Oakland avenue; the west track being used for cars going in a southerly direction and the east track for north-bound cars. Marston avenue runs in an easterly and westerly direction. Mt. Vernon avenue is the first street north of Marston. An alley extending east and west intersects Oakland between Marston and Mt. Vernon near the middle of the block.

The deceased was a woman 86 years of age and in good health. She was a very large woman, weighing 250 pounds. She managed her home and cared for an invalid daughter, the other children working. On the afternoon in question she had been to a grocery store and bakery shop situated on the east side of Oakland avenue. She came out of the bake shop with a paper sack in her hand. She dropped a small parcel, and Mr. George L. Smith, one of the witnesses, picked it up for her. She was then near the line between the bake shop and the grocery, about 20 feet north of the alley. Mrs. Spreng lived at 259 Marston court, which was west of Oakland on the north side of Marston. When Mrs. Spreng was "at the curb," and started to cross, one of defendant's Oakland avenue cars was coming south and was a block away from her. A man was on the northwest corner of Mt. Vernon and Oakland, waiting to board the car. Mr. Smith, who picked up the package for Mrs. Spreng, testified, in substance,

that when Mrs. Spreng started across the street the south-bound car was a block away from her.

"*Q.* Did you hear a gong?

"*A.* Oh, yes.

"*Q.* When you heard the gong was your attention attracted to where she was?

"*A.* I heard the gong plain, and I expected the driver would slow up, and let her get by, for she apparently—I did not think—she did not look to me as though she was able to turn around in the position she was.

"*Q.* Where was she at this time; that is, how far across the track was she?

"*A.* Well, when I heard the gong, sne was on the tracks, but just exactly where I could not say.

"*Q.* Did you see her—that is what attracted your attention, the gong attracted your attention?

"*A.* Yes, sir.

"*Q.* Did you see her when she was struck; did you see the car strike her?

"*A.* I see the car shoot by. You see she was on the opposite side to me.

"*Q.* Could you tell about how far she would have to go to get safely across?

"*A.* Well, I could not. I would think if she was a yard from the car she would have been all right.

"*Q.* Just what do you mean by that?

"*A.* Well a step, a yard.

"*The Court:* If she had been a yard further, she would have been all right?

"*A.* Yes, sir.

"*Q.* If she had been a yard further she would have been in safety beyond the rails?

"*A.* I think so."

The record shows Mrs. Spreng was thrown on the opposite side of the street from where she had started, indicating she had passed the center of the south-bound car when she was struck and had nearly reached a point of safety. The testimony is that when Mr. Smith heard the gong the car was about 80 feet away.

Two 9-year-old boys saw the car coming from the

north and say a man was at the intersection of Mt. Vernon and Oakland, waiting to take the car; that it stopped at Melbourne, but did not stop at Mt. Vernon.

"*Q.* Just go right ahead and tell what happened?

"*A.* And then Mrs. Spreng she just had one more step to take, then she would have been out of the way, clear from the car, but before she could take that one step the car had hit her.

"*Q.* Where were you standing when Mrs. Spreng had been hit?

"*A.* Corner of Marston and Oakland.

"*Q.* And did you see her try to cross the street?

"*A.* Yes, sir."

Another witness testified, in substance, that:

He saw the car coming, and a man was at the corner waiting for it. "What drawed my attention, sir, was a gentleman standing on the corner, and I heard the car, * * * and I saw him try to stop for this one on the corner, and he could not do it, and the fellow tried to run to catch it, and he made a few steps, I judge—what I mean by running he made a few steps to make believe he was going to catch the car you see; then the motorman put on more speed, and he went on from there. He saw he could not stop to get this fellow, see, so he went on from there. * * * The man was standing on the northwest corner of Oakland and Mt. Vernon, waiting for the car. And the car did not stop.

"*Q.* Now then, when the car—did the car slacken up any at the time you heard this rumbling noise?

"*A.* A little; yes, sir.

"*Q.* But it did not come to a stop?

"*A.* No, sir.

"*Q.* And the man did not get on?

"*A.* No, sir.

"*Q.* Then what did the motorman do after the car passed the northwest corner?

"*A.* After the car passed the corner there he put on more speed. When he got in front of the hardware store which drawed my attention, he rang the gong of the car. * * *"

He says he saw Mrs. Spreng between the tracks,

that she was between the rails of the south-bound track, and that the car was going 20 to 22 miles an hour; that Mrs. Spreng was hit by the car and thrown clear of the track on the west side of it. We have abbreviated the testimony offered by the plaintiff. None was offered on the part of the defendant.

It is fair to assume that if Mrs. Spreng looked, she would have seen what Mr. Smith and the other witnesses saw; that is, when she started to cross the street, a car approaching her 300 feet away, with an intervening street at which a man was standing waiting for the car. It is not likely Mrs. Spreng desired to be hit by a heavy moving street car. She is not here to tell what she saw and thought, but it is not a violent presumption to conclude from all the testimony and circumstances that she thought she had time to cross the street in safety. In fact the record shows that she nearly did so, and some of the testimony indicates that if the motorman had been exercising due care, she would not have been hurt.

The respective rights of street cars and pedestrians have frequently been discussed by this court. Though Mrs. Spreng was 86 years old and very large, she had a right, in the exercise of due care, considering her age and clumsiness, to travel across the streets near her home. The principles of law involved are not new. Some of the cases in which they are stated are *Ryan* v. *Railway Co.*, 123 Mich. 597 (82 N. W. 278) ; *Gaffka* v. *Railway*, 143 Mich. 456 (106 N. W. 1121) ; *La Londe* v. *Traction Co.*, 145 Mich. 77 (108 N. W. 365) ; *McQuisten* v. *Railway Co.*, 147 Mich. 67 (110 N. W. 118) ; *Deneen* v. *Railway Co.*, 150 Mich. 235 (113 N. W. 1126, 13 Am. & Eng. Ann. Cas. 134) ; *Seebach* v. *Railways Co.*, 177 Mich. 1 (142 N. W. 1086) ; *Millette* v. *Railway*, 186 Mich. 634 (153 N. W. 10).

We think the case should have been submitted to the jury.

Judgment is reversed, with costs to the plaintiff against the defendant.

KUHN, C. J., and STONE, BIRD, STEERE, and FELLOWS, JJ., concurred with MOORE, J.

BROOKE, J. I am of opinion that a verdict was properly directed.

OSTRANDER, J., did not sit.