HERSHEY v. DETROIT UNITED RAILWAY.

1. PLEADING—DECLARATION—COUNTS—SUBSEQUENT NEGLIGENCE.
   In an action against a street railway company for injuries resulting in the death of plaintiff's decedent, where the declaration had no count declaring upon the subsequent negligence of the defendant, that question cannot be considered.

2. APPEAL AND ERROR—EVIDENCE—INFERENCES—DIRECTED VERDICT.
   In deciding the question as to whether the trial judge was justified in directing a verdict for the defendant on the ground that decedent was guilty of contributory negligence, the Supreme Court must give the plaintiff the most favorable inferences that may be fairly drawn from the testimony.

3. STREET RAILWAYS—PERSONAL INJURIES—CONTRIBUTORY NEGLI-
   GENCE—DIRECTED VERDICT.

> In an action against a street railway company for injuries
> resulting in his death received by plaintiff's decedent
> when struck by defendant's car as he was crossing a pub-
> lic street in the safety zone near a public crossing, where
> there was testimony that as deceased left the curb, walk-
> ing northeasterly, he looked to the west and when with-
> in four feet of the southerly rail he looked again both to
> the west and the east; that an east-bound car was ap-
> proaching; that it slowed down as it approached the
> safety zone as though it were going to stop for some per-
> sons standing there; that the ordinance of the city re-
> quired the car to stop before crossing the street when
> signaled by intending passengers; that without sound-
> ing the gong or bell it quickened its speed and struck
> deceased as he was almost across the track, the trial court
> was in error in directing a verdict for defendant upon the
> ground of contributory negligence.

Error to Wayne; Hosmer (George S.), J. Sub-
mitted January 27, 1920. (Docket No. 97.) Decid-
ed February 27, 1920.

Case by Clarence A. Hershey, administrator of the
estate of John L. Hobbins, deceased, against the De-
troit United Railway for the negligent killing of plain-
tiff's decedent. Judgment for defendant on a direct-
ed verdict. Plaintiff brings error. Reversed.

*Hugh Shepherd* (*William Henry Gallagher,* of
counsel), for appellant.

*Corliss, Leete & Moody* and *A. B. Hall,* for appellee.

MOORE, C. J. This is a personal injury case. John
L. Hobbins was struck by one of the defendant's cars
at the intersection of Riopelle street and Jefferson
avenue, and received injuries which resulted in his
death. Upon the trial no testimony on the part of de-

fendant was introduced. At the close of the testimony for the plaintiff the defendant moved that a verdict of no cause of action be directed, upon the ground that plaintiff was guilty of contributory negligence, which motion the court granted. The case is brought here by writ of error.

Counsel for the appellant say:

"But, if deceased had been guilty of negligence it would be relieved of the character of contributory negligence by the subsequent negligence of the defendant."

We think this contention is not in the case as the declaration has no count declaring upon the subsequent negligence of the defendant.

Upon this record the sole question involved is whether the judge was justified in deciding as a matter of law that defendant was guilty of contributory negligence so that his representatives could not recover. In deciding that question we must of course give plaintiff the most favorable inferences that may be fairly drawn from the testimony.

Mr. Hobbins was employed at the plant of the Detroit Screw Works, located south of Jefferson avenue, on Riopelle street. To reach his home his course would be north on Riopelle street to Jefferson avenue, and across Jefferson avenue on the east side of Riopelle street, where he would board a west-bound Jefferson avenue car.

It is claimed that when Mr. Hobbins arrived at the southeasterly corner of Jefferson avenue and Riopelle street a group of persons was standing in the safety zone, alongside the tracks on the southwesterly corner for the purpose of boarding an approaching east-bound car, and that as he left the curbstone Mr. Hobbins looked to the west and then proceeded to within about four feet of the southerly rail, looked again to the west, then looked to the east and proceeded di-

agonally northeasterly toward the safety zone.    It is further claimed that while Mr. Hobbins was pursuing this course the east-bound car was approaching, that it slowed down as it approached the safety zone, as though it was going to stop for the persons standing there; that the ordinance of the city required the car to stop before crossing the street to take on intending passengers, that it did not so stop but quickened its speed and that no gong or bell was sounded; that it overtook Mr. Hobbins as he was almost across the track.

One of the witnesses testified in part:

"On this day I was standing right in the safety zone, alongside the street car track.    There were others there, I don't know how many.    While standing there, I first noticed an east-bound car about a half a block away.    I intended to board it, and watched it as it approached, and saw that it slackened its speed to the extent that I thought it was going to stop.    I prepared to board it, but it did not stop opposite the safety zone, the trailer reached the center of Riopelle street before it stopped.    The car had a trailer.    When the car stopped someone left it and I boarded it.    I did not know Hobbins, and did not see him before or after the accident.    As the car approached me and passed me, it did not ring its gong at all."

Cross-examination.

"*By Mr. Hall:* What I mean to say is I did not hear the gong rung.    I do not mean to say that I did not notice it.    I mean to swear that the gong was not sounded.    He did not ring the gong."

Another witness testified in part:

"I quit work this day at five o'clock and went to Riopelle and Jefferson to take a west-bound car.    I went to the safety zone on the east side of Riopelle, and on the north side of Jefferson.    George Silk was standing there with me.    The first I saw of Hobbins was I saw him coming up on the hill and then as he got to the sidewalk on Jefferson avenue then he got to the sidewalk on Jefferson avenue, then he got to the

curbstone, I saw him when he was walking. He was walking toward the car. He looked around for the car and looked around again, and then he was struck. When I first saw him look was when he left the curbstone. He looked toward the west then. The next time I saw him look was when he was about four feet from the street car track. And he looked again toward the west. Then he looked toward the east and kept on going. Then I saw the car—the car did not ring; there were a number of people waiting for the car. Then the fender of the car caught him on his foot and it turned him around and he fell. The car also struck his back, that is the front part of the car where the motorman is, struck his back, the vestibule."

Another witness testified in part:

"On April 26th, 1917, I was a passenger on a street car east-bound on Jefferson avenue. I was right behind the motorman's vestibule. As the car approached Riopelle, there were a few people standing on the corner in the safety zone. As the car approached it slackened a little, and then it got under headway again without coming to a stop. I saw the man who was struck, probably thirty or forty feet before the car struck him. When I first saw him he was in the vicinity of the tracks—I won't say he was right on the track; he probably was a very few feet this side of the track, walking north across the street. From the time that I saw him walking across the street—from that time on there was no application of the brake or other slowing of the car, there did not appear to be any. There was no brakes put on, the car kept its regular speed until it struck the man. It struck him on the left side of the head. It was very violent—it sounded as if the car had been struck by a freight at the time."

It is claimed the testimony of this witness is very much modified by his cross-examination and by a written statement he signed soon after the accident. He testified the gong was sounded.

An ordinance was introduced in evidence reading in part:

"All cars carrying passengers, operated upon any line or State railroad in the city of Detroit, shall come to a full stop immediately before crossing any street or avenue in the said city whenever signalled to stop by any person desiring to take passage thereon or to alight therefrom."          *          *          *

It is claimed on the part of the defendant that the instant case is controlled in its favor by *Manos* v. *Railway Co.*, 168 Mich. 155. In that case on a rainy afternoon plaintiff was carrying an umbrella and did not look for a car after leaving the curb. It did not appear that there were at the street intersection persons awaiting to take the car, nor did it appear that the car slackened its speed as though intending to stop.

In *Putnam* v. *Railway*, 164 Mich. 342, Justice BROOKE, speaking for the court, said in part:

"Plaintiff offered in evidence an ordinance of the city of Detroit regulating the speed of street cars. The ordinance was not pleaded and was excluded. At the time of offering it, plaintiff's counsel explained that it was offered, among other reasons, for the purpose of showing that the plaintiff had a right to anticipate that the speed of the car that was approaching would not exceed a certain maximum rate. It is urged in this court that it was offered, not for the purpose of showing negligence on the part of the defendant, but to acquit the plaintiff of contributory negligence.

"An examination of the record in the case of *Moran* v. *Railway*, 124 Mich. 582, relied upon by plaintiff shows that the ordinance was in that case duly pleaded. An ordinance may not be introduced for the purpose of showing the negligence of the defendant unless pleaded. *Richter* v. *Harper*, 95 Mich. 221; *Gardner* v. *Railway Co.*, 99 Mich. 182. We think however, an ordinance may be admitted in evidence without pleading, where the sole purpose of its admission is to acquit the plaintiff of contributory negligence. The ordinance should have been admitted under proper instructions from the court as to the purpose of its admission."

And in that case it was said it ought not to be held as a matter of law that plaintiff was guilty of contributory negligence.    In *Tiley* v. *Railway Co.*, 190 Mich. 7, in an opinion by Justice BIRD it was said in substance:

"Instructions to the jury that, if they found defendant was accustomed to give warning to persons approaching whenever it was about to move one of the cars across the street on the wye, by having an employee standing near, or by sounding a gong or by other signals, the plaintiff would have a right to believe that no car was about to back across the highway, and if he did all that a careful and prudent man should do to avoid an accident, their verdict should be for plaintiff, correctly stated the rules of law applicable."

In *McManigle* v. *Railway*, 193 Mich. 530, Justice PERSON, speaking for the court, said in part:

"In determining whether a plaintiff's proofs show a *prima facie* cause of action, it is always necessary that they be construed as strongly in his favor as is reasonably possible:  *Putnam* v. *Railway*, 164 Mich. 342.   *   *   *   But he (plaintiff) is not to be charged with the duty of assuming that the car might be backed in violation of the ordinance," and it was said, "we do not think it can be said that plaintiff was guilty of contributory negligence as matter of law"

and the case was reversed.

See *Spreng* v. *Railway*, 197 Mich. 343, and cases cited therein.

In the instant case there was testimony to the effect that deceased looked when leaving the curb, and that a group of people were in the safety zone, for the purpose of taking passage on the approaching car, that it slackened its speed as though it was about to stop for them, that the city ordinance required the car to stop for awaiting passengers, that he looked again when about four feet from the curb, that the

car instead of stopping had its speed accelerated and hit the deceased when he was nearly across the track.

In view of this testimony, we think the case presented a question for the jury, under proper instructions.

The judgment is reversed and a new trial ordered.

STEERE, BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.