## MURPHY *v.* MANISTEE RAILWAY CO.

1. CARRIERS—NEGLIGENCE—RIDING ON RUNNING BOARD—PERSONAL INJURIES.

> In an action for personal injuries received by plaintiff by coming in contact with a pole in close proximity to the track, while riding upon the running board of defendant's street car, with defendant's consent, because of the crowded condition of the car, defendant was under the legal duty of operating its car with a high degree of care to avoid injuring plaintiff while in that position.[1]

2. SAME—WARNING—EVIDENCE—QUESTION FOR JURY.

> So where plaintiff was struck and injured by a pole in close proximity to the track, caused, as he alleged, by the swaying motion of the car, induced by the high speed at which it was run, the question as to whether defendant was negligent in operating its car at the speed at which it was run, without at least warning plaintiff of the danger, was a question for the jury.

3. SAME—CONTRIBUTORY NEGLIGENCE—NOTICE.

> Where defendant contended that plaintiff had ridden over the line many times during the summer, and had had an opportunity to observe the proximity of the poles to the track, and had he been exercising due care he would not have been injured, the question of his contributory negligence was a question of fact for the jury.

4. APPEAL AND ERROR—EVIDENCE—ADMISSIBILITY.

> Where testimony is generally inadmissible, but may be admissible for a particular purpose, which counsel failed to state to the court, he cannot complain to this court because of its rejection.

5. TRIAL—EVIDENCE—CROSS-EXAMINATION.

> Where defendant's manager had testified on his direct examination that changes had been made in the running boards, that they had been removed from one side of the cars, it was not error to permit him, on cross-examination, to answer why they were removed.

[1]On the duty of street car company to passenger on running board see note in 18 L. R. A. (N. S.) 160.

On whether riding on platform or running board of street car is negligence see notes in 49 L. R. A. (N. S.) 135; L. R. A. 1915B, 166.

On the duty as to condition of platform or running board of street car see note in 45 L. R. A. (N. S.) 969.

6. Appeal and Error—Motion—Evidence.
    Where a question was answered before objection, and no motion to strike was made, it was not error to permit it to remain in the case.

7. Trial—Conduct of Court.
    Where no injury to defendant is apparent from collisions between court and counsel, over what the court termed wasting time on trivial matters, showing some slight irritation, *held*, not to be error.

8. Same—Argument of Counsel.
    Where counsel, in his argument to the jury, said: "This jury can do something to help this boy bear his infirmities," under plaintiff's theory that defendant was responsible for plaintiff's condition, the appeal was one for compensation, and was not objectionable as an appeal for charity.

9. Appeal and Error—Saving Question for Review.
    Where no objection or ruling was made to argument of counsel, the question is not open to review in this court.

10. Trial—Special Questions.
    Refusal to submit special questions which are ambiguous and not single, or which, if answered favorably, would not have been controlling of the general verdict, was not error.
    Per Stone, Moore, and Bird, JJ. Kuhn, C. J., and Ostrander, Steere, and Brooke, JJ., concurred in the result.

Error to Manistee; Withey, J. Submitted June 16, 1916. (Docket No. 28.) Decided March 29, 1917.

Case by Ronald L. Murphy, by next friend, against the Manistee Railway Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*P. T. Glassmire (Max E. Neal*, of counsel), for appellant.

*Charles N. Belcher (Thos. Smurthwaite*, of counsel), for appellee.

Bird, J. Defendant operates a street railway in the city of Manistee. It also operates in the summer months an electric railway from the city to Orchard

Beach, an amusement park, which lies two miles north of the city on Lake Michigan. This railway has a single track, and is constructed on the east side of the public highway, and the trolley poles are placed on the east side of the track. The cars operated thereon are of the summer type with seats extending crosswise. They are entered from running boards extending along the sides of the car, and grab handles are provided on each stanchion to assist the passengers in boarding and alighting therefrom. Two cars are operated together, a motor car and a trailer.

Late in the afternoon of July 26, 1914, plaintiff, a boy of 18 years, and two male companions boarded one of the cars in the park to return to the city. They took seats in the front end of the car. Before leaving the park the car filled rapidly, and plaintiff surrendered his seat to a lady and stood on the running board on the east side of the car facing his companions. The car appears to have been well under way when it reached the straight track in the highway. While plaintiff stood facing and conversing with his companions he was swept off from the car by contact with one of the trolley poles and injured.

The negligence which he relied upon for recovery was the roughness of the track, the close proximity of the trolley poles to the track, the excessive speed of the car, and the failure to warn him of the danger. The defendant denied that it was negligent in any of these respects, and asked for a directed verdict, on the ground that no negligence had been shown on the part of the defendant, and on the further ground that plaintiff's negligence was apparent from his own testimony. The court denied the motion and submitted the case to the jury, which rendered a verdict of $1,500.

1. Was defendant negligent? It appears to be conceded that passengers were permitted to ride upon the running boards of the cars whether the cars were filled or not, but it appears in the instant case that

plaintiff was riding thereon because of the crowded condition of the car. We must assume, therefore, that plaintiff was riding there with the permission and consent of the defendant. This being so, defendant was under the legal duty of operating its car with a high degree of care 'so as not to injure him while in that position. *Upham* v. *Railway Co.*, 85 Mich. 12 (48 N. W. 199, 12 L. R. A. 129) ; *Larskowski* v. *Railway*, 193 Mich. 409 (159 N. W. 530). See, also, *Noble* v. *Railway Co.*, 98 Mich. 249 (57 N. W. 126) ; *Pomaski* v. *Grant*, 119 Mich. 675 (78 N. W. 891) ; *Dupuis* v. *Traction Co.*, 146 Mich. 152 (109 N. W. 413).

The charge is made in the declaration, and the proofs tend to support it, that the pole in question was only 15 inches from the running board, and that it inclined to the west, thereby bringing the upper portion thereof nearer the track; that the track was crooked, rough, and uneven; that the car was driven at a high rate of speed; and that by reason thereof it caused a lateral movement of the car as well as an up and down motion, which brought the plaintiff in contact with the pole. It was further shown that no warning was given him of the danger.

Whether it was negligent to operate the car at the speed it was going' over this track, considering its condition and its close proximity to the pole, without at least warning plaintiff of the danger, was a question of fact to be determined by the jury.

2. Was plaintiff guilty of contributory negligence? Under the proofs he was not guilty of negligence *per se* in riding upon the running board. *Upham* v. *Railway Co.*, *supra*. It is urged that plaintiff was familiar with the location of the poles; that he had an opportunity to observe their proximity to the track on the day in question as well as at other times during the summer and previous summers. That the poles were in plain view, and had he been exercising the care he should have exercised to avoid coming in contact with

them, as did others who were riding on the running board, he would not have been injured. On the other hand, plaintiff insists that, while he had been out to the park many times, his attention had never been challenged to the nearness of the poles nor of this particular pole; that when the accident occurred he was riding in the usual way holding onto the stanchion with both hands. He concedes that he was not looking in the direction in which the car was going, and was not looking at the poles, but that he had no reason to believe that the clearances of the track were not sufficient to permit of his riding where passengers were accustomed to ride, and he further insists that he would not have come in contact with the pole had the car been operated consistently with the condition of the track and the nearness of the pole. These respective contentions likewise raised a question of fact for the jury.

3. Dr. Robinson, who testified in behalf of plaintiff, was asked the following question upon cross-examination:

"*Mr. Neal:* Doctor, the evidence shows that you have presented a bill for $150 for your professional services in doctoring Mr. Murphy. Has any part of that bill been paid?

"*Mr. Smurthwaite:* I object to that as immaterial and irrelevant.

"*The Court:* The objection is sustained. (Exception noted for defendant.)"

Counsel now makes the point that it was error to exclude the answer to the question because if the bill were not paid it would have a tendency to show the interest of the witness in the litigation. In support of this contention the following authorities are cited: *Lack Malleable Iron Co.* v. *Graham*, 147 Ky. 161 (143 S. W. 1016); *Kingston* v. *Roberts*, 175 Mo. App. 69 (157 S. W. 1042).

As a general proposition any question upon cross-

examination which will develop the interest or bias of the witness is admissible (*Geary* v. *People,* 22 Mich. 220; *Swift Electric Light Co.* v. *Grant,* 90 Mich. 469, 475 [51 N. W. 539]), and I am of the opinion that this testimony was competent, but, independently of the question whether it was competent or not, counsel is in no position to complain of the error. Had he stated to the trial court his reason for desiring its admission, it is more than probable that the court would have admitted it. Where testimony is generally inadmissible, but may be admissible for some particular purpose, it is not quite fair to the trial court to refrain from stating the particular purpose and after an adverse ruling complain to this court because of its rejection.

4. Chas. Kresler, manager of the defendant railway, was asked upon cross-examination the following question:

"*Q.* Why did you make the change in the running board?

"*A.* Made this year so we would not have a repetition of what we had last year—people getting on that running board and getting injured."

Counsel argue that the changes made in the running board after the accident was immaterial, and therefore its admission was error under the rule laid down in *Moon* v. *Railroad Co.,* 143 Mich. 125 (106 N. W. 715, 108 N. W. 78), and many other cases. Plaintiff concedes the rule as stated by counsel, but he seeks to avoid its application in this instance by showing that this witness and another testified on direct examination that changes had been made in the running boards; that they had been removed from one side of the cars. In view of this we see no error in permitting the witness to answer why they were removed. It further appears that the question was answered before objection was made, and that no motion was

made to strike out the answer. Permitting it to remain in the case, therefore, was not error.

5. At the conclusion of the testimony of a witness who had given cumulative evidence, the following colloquy took place:

"*The Court:* How many more witnesses? I don't want any more witnesses on the same subject in concurrence or along the same lines testified concerning.
\* \* \*

"*Mr. Neal:* What is that?

"*The Court:* You need not put on any more witnesses on the same line and character like those you have sworn on the subject. We have enough. None of them changed the aspect of anything, and there is no use of multiplying it.

"*Mr. Neal:* I take an exception to the remarks of the court.

"*The Court:* If you have anything new all right; I will hear it.

"*Mr. Neal:* I also take exception to that remark of the court.

"*The Court:* All right; take all the exceptions you want to. (Exception for the defendant.)"

Later in the trial defendant's counsel offered the subpœna of one of his witnesses in evidence, but at the time it did not appear to be disputed that the witness had been subpœnaed. The court remarked:

"Oh, don't waste time over such trivial matters as that.

"*Mr. Neal:* Give me an exception, please, to the remark of the court.

"*The Court:* Take all exceptions you want.

"*Mr. Neal:* And give me also an exception to this remark, please.

"*Q.* I now ask you if that was the subpœna served upon you?

"*A.* It was not. This was.

"*Q.* You received a copy of it, did you?

"*A.* Yes.

"*Mr. Smurthwaite:* We are not raising any question on the witness' subpœna.

"*Mr. Neal:* Your questions have been insinuating,

as the remark here shows, and I object to the remarks of the court because they are prejudicial.

"*The Court:* That is the third objection you have taken. Do you want another one?

"*Mr. Neal:* I also object to those remarks.

"*The Court:* Go on and take them."

It is argued that the judgment should be reversed and a new trial ordered because of these colloquys. These collisions between court and counsel, when reduced to print, give one the impression that counsel was oversensitive concerning the court's suggestions about wasting time over immaterial matters, and they show a slight irritation upon the part of the trial court. If it be conceded that both were in fault, how does it appear that the result of these controversies was harmful to defendant? In jury trials where much is at stake such collisions not infrequently occur. They are well understood by the public, juries are used to them, and bystanders attend with expectation of hearing them. Because this is so, it does not necessarily follow that they are injurious to either of the parties litigant. No injury to defendant is apparent in the verdict and none has been pointed out; therefore the incidents will not be held error.

6. In his address to the jury plaintiff's counsel made use of the following language:

"*Mr. Belcher:* This jury can do something, gentlemen, to help this boy bear his infirmities. (Objected to. Overruled. Exception noted for defendant.)

"*Mr. Belcher:* Each one of you gentlemen should place yourself in the boy's position."

The first statement is said to be error because it was an appeal to the jury to bestow charity. If we were to assume that defendant was not responsible for plaintiff's infirmities, we could then agree with counsel, but under plaintiff's theory defendant was responsible therefor, and from this view counsel's ap-

peal was one merely for compensation and not for charity.

To the second statement no objection nor ruling was made. Consequently we do not consider it.

7. Request was made by the defendant to have the following special questions submitted to the jury:

No. 1. At the time and place that plaintiff received his alleged injuries was defendant running its said cars Nos. 1026 and 1032 at an excessive rate of speed?

No. 2. At the time and place that plaintiff received his alleged injuries was he leaning out from said car far enough to hit the trolley pole and beyond the other passengers standing on the running board with him on said car?

No. 3. At the time and place that plaintiff received his alleged injuries, was there any defect in defendant's car tracks which caused said cars to bound and lurch beyond the usual and reasonable operation of its cars?

Question 2 was properly rejected because it was ambiguous and not single. Question 1, standing alone, would not have been controlling of the general verdict had it been answered in the negative. The same can be said of question 3. Had both been answered in the negative, they would have had some force, but such a finding would not have been controlling, because the jury might have concluded that the sole cause of the injury was the nearness of the pole to the track. The court was not in error in refusing to submit them.

The remaining errors assigned, including those affecting the charge of the court, have been examined, but we find them without merit.

The judgment of the trial court is affirmed.

STONE and MOORE, JJ., concurred with BIRD, J.

KUHN, C. J., and OSTRANDER, STEERE, and BROOKE, JJ., concurred in the result. PERSON, J., took no part in the decision.