GLEASON *v.* SUTTER.

1. NEGLIGENCE—INVITEES—GRIST MILL—EVIDENCE.
    Evidence presented in action by plaintiff farmer for injury to hand at defendant's grist mill *held,* sufficient to permit jury to infer that plaintiff was an invitee on portion of premises where hurt and that a consequent legal duty was owed him which had not been properly discharged by defendant.

2. SAME—CONTRIBUTORY NEGLIGENCE—LACK OF VIGILANCE.
    A defendant who, by his own act, has thrown the plaintiff off his guard and given him reason to believe that vigilance was

REFERENCES FOR POINTS IN HEADNOTES
[1] 38 Am Jur, Negligence §§ 96–103.
[2] 38 Am Jur, Negligence §§ 190, 192.
[3, 4] 3 Am Jur, Appeal and Error § 888.

not needed, may not bar plaintiff's claim on ground of contributory negligence in failing to exercise such vigilance.

3. SAME—CONTRIBUTORY NEGLIGENCE—GRIST MILL—HAND INJURY—
EVIDENCE—INSTRUCTION.

Jury's verdict for plaintiff farmer whose hand was severely injured when caught between belt and pulley at defendant's grist mill is not disturbed, where there was conflicting evidence on issues of defendant's negligence and plaintiff's contributory negligence and no complaint is made as to instructions given.

4. APPEAL AND ERROR—JURY—QUESTIONS OF FACT—EVIDENCE—INSTRUCTIONS.

The finding of a jury on a question of fact upon which there was conflicting testimony and as to which suitable instructions were given is not subject to disturbance by the Supreme Court.

Appeal from Grand Traverse; Brown (Charles L.), J. Submitted April 4, 1957. (Docket No. 30, Calendar No. 47,037.) Decided November 26, 1957.

Case by Leonard Gleason against Fred Sutter, doing business as Traverse City Implement Company, for injuries sustained as a customer in defendant's grist mill. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Murchie, Calcutt & Brown,* for plaintiff.

*Harry T. Running,* for defendant.

VOELKER, J. Late in October, 1953, the plaintiff farmer, Leonard Gleason, drove to the defendant's grist mill in Williamsburg to have some of his corn on the cob and fresh oats ground into feed for his cattle. The defendant's manager in charge of the mill, Henry Matteson, told him to dump the grain into an outside chute so that it could be ground. The grinding and crushing machinery was located in the mill proper in a pit below the level of the chute. The oats went through uneventfully but when the corn

was dumped in it stopped the corn crusher. Matteson went into the pit and attempted to start the cob breaker but it wouldn't start. He came back up and went to what he later in court identified as a switch box. He had some conversation with Gleason as to whether there might not be some rocks in the corn and then returned to the pit.

From this point on the evidence is conflicting, but it is clear that the plaintiff, whether specifically requested to or not, went down into the pit and attempted to help Matteson get the machinery started by also pulling on the belts as he saw Matteson doing. Time passed, but the crusher still stuck. After an interval Matteson left Gleason standing in the pit and went up to the main floor to throw on the switch. He returned and they tried to start the machinery again. After Matteson again went upstairs Gleason touched the pulley and this time his gloved left hand was caught between the suddenly moving belt and pulley and badly mangled. Following suit a jury returned a verdict of $5,000 against the defendant, who appeals here from the court's failure to grant his motion for a directed verdict, for judgment notwithstanding the verdict, and, alternatively, for a new trial.

Defendant claimed below and claims again here that the plaintiff should not, so to speak, recover any gold from Sutter's mill because he was contributorily negligent as a matter of law; that he was also a mere trespasser in the pit to whom the defendant's only duty was to refrain from wilfully injuring him; and that there was no evidence of even ordinary negligence on his part. Plaintiff claims that he was an invitee and moreover, whatever his legal status, that his presence and peril were known to the defendant; and that in any case the jury had passed on all that.

At the trial plaintiff testified, among other things, that after Matteson asked him if there were any

rocks in the corn, he went down into the pit mainly
out of curiosity to see if there were any; that he
found Matteson examining the machinery and pull-
ing on some pulley belts; that he, Gleason, then went
on the other side of the machine and took hold of
some spokes, whereupon Matteson told him to let go
of what he was doing and "take ahold" of the belts,
which he did, but the machinery still wouldn't turn;
that they tinkered unsuccessfully in the pit for a time
and that Matteson then wordlessly went upstairs
while he still pulled on the belts once or twice, but
nothing happened; that Matteson reappeared and
they again tinkered and pulled, still to no avail, and
that Matteson again wordlessly left the pit, leaving
plaintiff behind, and again plaintiff "took ahold of
the belt with my left hand   *   *   *   and next thing I
realized, my hand was caught in under there."

Henry Matteson testified for the defense that he
told Gleason when he left the pit for the last time—
and while the latter was standing clear back "agin"
the wall—that "I am going up and try it, see if it
turns." On cross-examination he testified that there
were no warning or trespass signs in or around the
pit; that he knew that Gleason was in the pit; that
the reason he did not tell him not to tug the belts
was because he knew that Gleason could not get hurt
while the motor wasn't turned on; that he didn't tell
him to stop helping or to leave the pit; that when
he left the pit he didn't warn Gleason or tell him
where to stand, but that he told him to "see if it
turns;" that he didn't tell him not to move or that he
shouldn't touch the belts; that he knew that when
the motor was running and the belts responded that
a person would likely be unable to let go before "it
catches you;" that he did not think it was necessary
to explain all this to Gleason inasmuch as he thought
the man clearly knew what he was about to do; that
when he last left the pit and went upstairs he did not

explain to Mr. Gleason what it was he was about to "try," but that in his opinion Gleason should have known that there was nothing up there to try but for him to throw the switch.

There was also testimony that the plaintiff saw Matteson throw the switch earlier, before he entered the pit, and that he knew or should have known what Matteson was about when he later went upstairs to "try" it; and, further, that the plaintiff had once worked around a grist mill and should have known of his danger. The plaintiff's testimony tended to indicate, however, that he was not familiar with this particular portion of grist mills, and that he had never been in the pit or examined the power arrangements of this mill. He also testified that if Matteson said anything upon last leaving the pit that he did not hear it.

Many cases are cited by both sides, pro and con, on the various legal theories presented by the litigants, but we think no useful purpose would be served in reviewing all of them here. We think it is sufficient to observe that many of the crucial facts in this case were disputed and that these disputed facts were passed on by a jury under adequate instructions as to the law. In our view the real nub of this case is what happened and what was said or left unsaid or what warnings were given or not given when Matteson left the pit for the last time to throw the switch. On this score the evidence was conflicting and also, on this score, that great American grain grinder of truth, the jury, has now spoken. We see no compelling reason why we should now pit our absentee guess against the jury's and some rather good ones why we should not.

We think there was sufficient facts and permissible inferences from fact here from which the jury could conclude that Gleason was—or became—an invitee on that portion of the premises where he was

hurt, and that a consequent legal duty was owed him which, under these circumstances, was not properly discharged by the defendant. As for the claim of contributory negligence, we can perhaps best quote from *Kinney* v. *Folkerts,* 78 Mich 687, 697 (language quoted approvingly in *Watkinson* v. *Reichle,* 292. Mich 484, 487, 488 [7 NCCA NS 398]), where we said that "if the defendant, by his own act, has thrown the plaintiff off his guard, and given him reason to believe that vigilance was not needed, the lack of such vigilance on the part of the plaintiff is no bar to his claim." In any case this and other issues were properly submitted to the jury and it has spoken. No complaint is made that the court's instructions were not adequate.

Once again we think we might profitably observe that this Court does not sit as a kind of super jury designed to permit losing litigants still another crack at the facts. The resolution of disputed questions of fact lies peculiarly within the province of our juries, and when once they have acted, guided by fair and adequate instructions on the law by the court, that should be the end of the line—and we must so hold in this case. The decision below is affirmed, with costs.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, KELLY, CARR, and BLACK, JJ., concurred.