CARRERAS v HONEGGERS & COMPANY, INC.

1. WITNESSES—REDIRECT EXAMINATION—CROSS-EXAMINATION.

A witness on redirect examination is allowed to explain an answer made on cross-examination.

2. WITNESSES—EVIDENCE—RELEVANCY—CROSS-EXAMINATION—REDIRECT EXAMINATION.

Allowing a plaintiff's witness to give testimony on redirect examination relating to a safety code was not error, although the code was not otherwise relevant to the case, where (1) the code was first brought up by defense counsel on cross-examination of the witness, and (2) the trial court restricted the plaintiff's attorney on redirect examination to eliciting testimony on those portions of the code brought out on cross-examination.

3. EVIDENCE—NEGLIGENCE—SUBSEQUENT REPAIRS—SAFETY MEASURES—FEASIBILITY.

Evidence in a negligence case of subsequent repairs by the defendant is generally inadmissible; however, such evidence is admissible to show the feasibility of taking safety measures where the defendant has put feasibility of taking safety measures in question.

4. EVIDENCE—NEGLIGENCE—SUBSEQUENT REPAIRS—OBJECTIONS—CURATIVE INSTRUCTIONS—MISTRIAL.

Failure to grant a mistrial in a negligence case, after plaintiff's

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 81 Am Jur 2d, Witnesses § 425.
[3–5] 30 Am Jur 2d, Evidence § 275.
Admissibility of evidence of repairs, change of conditions, or precautions taken after accident. 170 ALR 111.
[6–9] 75 Am Jur 2d, Trial §§ 1032–1035.
Tests or experiments in jury room. 95 ALR2d 351.
[10] 22 Am Jur 2d, Damages §§ 305–307.
[11] 29 Am Jur 2d, Evidence §§ 249, 251–257.
[12] 29 Am Jur 2d, Evidence § 785 et seq.
[13] 57 Am Jur 2d, Negligence §§ 94, 95, 301, 302.
[14] 57 Am Jur 2d, Negligence § 66 et seq.
[15–17] 57 Am Jur 2d, Negligence § 317 et seq.
[18] 57 Am Jur 2d, Negligence §§ 64, 65.
[19] 5 Am Jur 2d, Appeal and Error § 939 et seq.

witness testified as to subsequent repairs made by the defendant, was not error where the testimony was responsive to a question, the testimony was given before defendant objected, and the defendant declined a curative instruction.

5. EVIDENCE—NEGLIGENCE—SUBSEQUENT REPAIRS.

Admitting testimony in a negligence case concerning subsequent repairs by the defendant was not reversible error where the plaintiff did not argue that the subsequent repairs were proof of negligence and there were other facts upon which a verdict for plaintiff could have been rendered.

6. TRIAL—EXHIBITS—JURY ROOMS—TRIAL COURT—DISCRETION.

It is within the discretion of the trial court to allow exhibits to be taken into the jury room.

7. TRIAL—EXHIBITS—WITNESSES—JURY.

An exhibit, which may be used as a testimonial aid to help the jury understand the evidence, must be sponsored by a witness who uses it to relate his personal knowledge or scientific skill and understanding.

8. JURY—EVIDENCE—EXHIBITS.

The jury settles disputes over the correctness of the representation made by an exhibit.

9. TRIAL—EXHIBITS—JURY—JURY ROOMS—EXPERT WITNESSES.

Allowing a jury to take charts into the jury room in a negligence case was not an abuse of discretion where the charts were properly founded on the testimony of an expert witness and the nature of the expert's testimony was complex.

10. DAMAGES—NEGLIGENCE—ABSENCE FROM WORK—INCENTIVE TO WORK.

It is within the discretion of the trial court in a negligence case to admit evidence bearing on the question of whether an injured party possessed sufficient incentive to return to work, in order to show that an absence from work was not due solely to injuries received.

11. EVIDENCE—RELEVANCY—MATERIALITY—JUDGES—DISCRETION.

The determination of the relevancy and materiality of evidence is a matter of discretion with the trial judge.

12. EVIDENCE—PHOTOGRAPHS—LOSS OF LEGS.

Admitting in evidence a 26-year-old photograph of the plaintiff as a track star was not an abuse of discretion, in an action for

damages arising out of a mill accident in which plaintiff lost a leg, where at trial there were numerous references to the place that physical activity had in the life of the plaintiff prior to the accident.

13. NEGLIGENCE—INSTRUCTIONS TO JURY—DEAD PERSON—EXERCISE OF ORDINARY CARE—PRESUMPTIONS.

A standard jury instruction, which provides that the jury must presume that a person who has died and cannot testify was in the exercise of ordinary care, is not applicable to a person who had a stroke and was unable to testify, who was deposed prior to trial, and whose deposition was admitted into evidence at trial (SJI 10.08).

14. NEGLIGENCE—REASONABLY CAREFUL PERSON.

A person, to avoid being negligent, must act as a reasonably careful person would act, however, he is not required to select the optimum alternative in each and every circumstance.

15. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—VIGILANCE INSTRUCTIONS.

If a defendant by his own act has thrown the plaintiff off his guard and given him reason to believe vigilance was not needed, the lack of such vigilance on the part of the plaintiff is no bar to his claim.

16. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

Contributory negligence results when a plaintiff has failed to honor his duty to himself to safeguard his own welfare.

17. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—DUTIES.

In a negligence action arising out of an injury at defendant's mill, whether the plaintiff acted on his own or at the direction of the defendant is a factor in establishing the defendant's duty to plaintiff, but not in establishing the plaintiff's contributory negligence.

18. NEGLIGENCE—LICENSEE—INVITEE—EVIDENCE—MILL OPERATOR—BREACH OF DUTY.

A jury could reasonably conclude that a defendant mill operator breached its duty to either a licensee or an invitee, in an action for damages for loss of a leg caused by a mill auger, where there was evidence that (1) there had been a protective grate over the auger when installed but it was later removed by defendant, (2) the auger controls were inadequate, and (3) the equipment was improperly maintained.

19. APPEAL AND ERROR—DAMAGES—REMITTITUR—JURY VERDICT.
    The Court of Appeals will not substitute its judgment for that of
    the jury unless the jury verdict is the result of prejudice,
    caprice, passion, partiality, sympathy, or kindred reasons
    rather than a result of the consideration of the evidence and
    actual existing conditions.

Appeal from Washtenaw, Ross W. Campbell, J. Submitted February 5, 1976, at Lansing. (Docket No. 22489.) Decided May 17, 1976.

Complaint by Eugene Robert Carreras and Gloria Carreras against Honeggers' & Company, Inc., for damages for loss of a leg in an accident at a feed mill. Judgment for plaintiffs. Defendant appeals. Affirmed.

*Forsythe, Campbell, Vandenberg, Clevenger & Bishop, P. C.* (by *Donald E. Shelton*), for plaintiffs.

*Hooper, Hathaway, Fichera, Price & Davis* (by *Peter A. Davis* and *Bruce T. Wallace*), for defendant.

Before: M. J. KELLY, P. J., and V. J. BRENNAN and DANHOF, JJ.

DANHOF, J. On June 1, 1971, plaintiff Robert Carreras, who was then employed as a truck driver, delivered to the defendant's mill a load of corn gluten. Plaintiff on direction of Kenneth Johnson, an employee of the defendant, positioned his truck so as to dump his load into a metal hopper designed to receive the load. At the bottom of the hopper there was a rotating screw auger approximately 10 inches in diameter which carried the material out of the hopper and into the defendant's building. The front end of the truck was

elevated so as to dump the load out a small door in the tailgate.

The unloading went smoothly at first, but after a short time the gluten ceased to flow. Plaintiff explained to Mr. Johnson that this was because the cohesive mass had settled in transit. After several attempts to free the load plaintiff decided to climb into the truck with a shovel. He tossed the shovel over the side of the truck intending to follow it in to free the load. However, the shovel bounced around and fell out the open door at the rear end of the truck and into the hopper, jamming the auger. Plaintiff told Mr. Johnson to shut off the power to the auger. Johnson when deposed testified that he pushed four buttons to stop the machinery and informed the plaintiff that the conveyer had been shut off. Plaintiff asked for and received confirmation from Johnson that the power was off, then climbed into the hopper with a crowbar supplied by Johnson. Johnson was then sent to find a light for the plaintiff. Plaintiff's efforts to free the shovel were successful, however, when the shovel popped free the auger blade began to turn again, amputating plaintiff's left leg above the knee.

In plaintiff's action for negligence a jury returned a verdict of $500,000 in favor of Mr. Carreras and $50,000 in favor of his wife the co-plaintiff.

The first issue raised on appeal is whether the trial court erred by allowing certain testimony on redirect examination related to a 1972 safety code. The rule is that on redirect examination a witness ought to be allowed to explain an answer made on cross-examination. *Prieskorn v Kiehler,* 4 Mich App 679, 681; 145 NW2d 397 (1966).

While the 1972 safety code may not otherwise be

relevant to a 1971 accident, the substance of the code was first brought into issue by defense counsel who when cross-examining plaintiff's expert witness asked him about various changes in the 1972 code, and himself introduced portions of the code on cross-examination. A review of the record indicates that the trial court restricted the plaintiff's attorney on redirect examination to eliciting testimony only as to those portions of the 1972 code brought out on cross-examination. To do so was not error. *Prieskorn v Kiehler, supra.*

The second issue is whether the trial court committed reversible error by denying the defendant's motion for a mistrial after the jury heard testimony of a safety measure taken by the defendant after the time of the accident.

In his opening statement defense counsel explained to the jury at some length why it was not feasible to put a grate over the screw auger. Later, during cross-examination of the plaintiff's expert witness, he asked:

"*Q.* You have a PhD in Engineering and you fell into the pit?

"*A.* Yes, I did.

"*Q.* It's not possible, is it, Mr.—Dr. Youngdall to design a piece of machinery fool-proof from every possible type of accident, is it?

"*A.* No, but you can make it reasonably safe and this wasn't reasonably safe."

Apparently in response to the above, the following questioning took place between the plaintiff's attorney and the expert witness on redirect examination:

"*Q.* One final question, Professor Youngdall. Mr. Davis went over in detail your falling into the pit when

you went out to Honnegers Mill and I believe you told him that you did indeed fall up to your groin?

"*A.* Yes.

"*Q.* Did you fall all the way to the auger blades?

"*A.* No.

"*Q.* Why not?

"*A.* Because there was a grating over the pit where, I had had one bar removed so that the measurements could be made because the grating was there, it kept me from falling in and getting hurt, I got dirty."

After excusing the jury from the courtroom the defense counsel moved for a mistrial. The motion was denied. The trial court then asked him whether he wished the court to instruct the jury to disregard any subsequent repairs. The defense counsel declined this offer.

The trial court did not commit reversible error in denying the defendant's motion for a mistrial. First, since the defendant put feasibility of repair into question, the above response by the witness indicating safety measures were feasible would appear to fall within an exception to the general rule excluding evidence of subsequent repairs. McCormick, Evidence (2d ed), § 275, p 667. Next, where the question was answered before objection and the defendant declined a curative instruction, it was not error to let the testimony stand. *Murphy v Manistee R Co,* 194 Mich 595, 600–601; 161 NW 876 (1917). Finally, even if admission of the above testimony were deemed error, the record does not show the plaintiff argued subsequent repair as proof of negligence. Moreover, there were other facts shown upon which a verdict could have been rendered, so that if error occurred, it was not reversible. *Judis v Borg-Warner Corp,* 339 Mich 313, 325–326; 63 NW2d 647 (1954).

The third issue is whether it was reversible

error to allow certain exhibits to be taken into the jury room.

The general rule is that it is within the discretion of the trial court to allow exhibits to be taken into the jury room. *Silverstone v London Assurance Corp,* 187 Mich 333, 342; 153 NW 802 (1915). While an exhibit may be used as a testimonial aid to help the jury understand the evidence, it "must be sponsored by a witness who uses it to relate his personal knowledge or scientific skill and understanding". *Finch v W R Roach Co,* 295 Mich 589, 595; 295 NW 324 (1940). Further, where the correctness of a representation is disputed, it is for the jury to settle. *Richmond v Atkinson,* 58 Mich 413, 415; 25 NW 328 (1885).

In the present case, plaintiff's expert witness, an economist, testified as to the potential loss of income on the part of the plaintiff. In his testimony he assumed that the plaintiff's income could vary along the scale of potential incomes. His projections as to loss of earnings were based on the various possible future income levels of the plaintiff. All this information was summarized on two charts subsequently labeled plaintiff's exhibits 15 and 16. On direct examination the witness testified in detail as to the basis for his figures summarized on the chart. He was also cross-examined at length as to the accuracy of his projections on plaintiff's future earning capacity. It was apparent from the record that the witness sponsored the exhibits as illustrative of his expert opinion in the case. As such, the exhibits were correctly used to aid the jury. *Finch v W R Roach Co, supra.* Further, the jury could properly determine the correctness of the projections, which were put in dispute by the defendant on cross-examination. *Richmond v Atkinson, supra.* Given the complex nature of the

expert's testimony and given that the charts were properly founded on his testimony, we cannot find that the trial court abused its discretion in allowing the jury to take the charts into the jury room for their deliberations. *Silverstone v London Assurance Corp, supra.*

The fourth issue is whether the trial court abused its discretion in not admitting certain evidence of the plaintiff's post-accident income as it related to the plaintiff's incentive to work.

*Blacha v Gagnon,* 47 Mich App 168, 174; 209 NW2d 292 (1973), states:

"It is within the discretion of the trial court to admit evidence bearing on the question of whether an injured party possessed sufficient incentive to return to work." [Citations omitted.]

The defendant sought to admit evidence of alleged interest income the plaintiff received from investing an advance payment made to him by the defendant's own insurance carrier amounting to about $1000 annually. The trial court refused to admit such evidence to the jury to show a reduced incentive to work on the part of the plaintiff. The court felt it would allow the defendant to benefit from its own act. In viewing the relatively small amount of income, the prejudicial effect on the plaintiff and the source of such income, we cannot say the trial court abused its discretion in the exclusion of this evidence.

Defendant's fifth contention on appeal is that it was error to admit a 26-year-old photograph of the plaintiff as a track star into evidence. Defendant cites no authority to support his position.

The determination of the relevancy and materiality of evidence is a matter of discretion with the trial judge. *Simonetti v Rinshed-Mason Co,* 41

Mich App 446, 457; 200 NW2d 354 (1972), *lv den,*
388 Mich 784 (1972).

The trial judge found that the photograph de-
picting the plaintiff as a track star sufficiently
related to the issue of plaintiff's mental anguish
and damages resulting therefrom to allow it into
evidence. The record contains numerous references
to the place that physical activity had in the life of
the plaintiff prior to the accident. Thus, it appears
the trial judge properly exercised his discretion.
*Simonetti v Rinshed-Mason Co, supra.*

Defendant also claims several errors in the trial
judge's instructions to the jury. The defendant had
requested that because Mr. Johnson, defendant's
employee, had suffered a stroke prior to trial and
was unable to testify, standard jury instruction
(civil) 10.08 be delivered. Instruction 10.08 reads in
pertinent part:

> "Because — has died and cannot testify, you must
> presume that (he) (she) was in the exercise of ordinary
> care * * * ".

However, Mr. Johnson was deposed prior to trial
and his deposition was admitted into evidence at
trial.

Instruction 10.08, by its own language, is inap-
plicable under these circumstances. It was not
error to deny defendant's request.

Defendant's second objection to the charge in-
volves the judge's refusal to instruct the jury that
the plaintiff's 11 children had no claim for dam-
ages. We note that the court delivered a caution-
ary instruction to the potential jurors prior to voir
dire regarding the extent to which the number of
defendant's children could be considered. In his
final charge to the jury the judge said:

"Now there are two plaintiffs in this trial and each is entitled to separate consideration of his or her own case. I shall not repeat my instructions for each plaintiff and unless I tell you otherwise, all instructions apply to each plaintiff."

The charge, taken as a whole, leaves no room for misunderstanding. *Johnston v Narmore,* 1 Mich App 160, 164; 134 NW2d 837 (1965), *aff'd,* 378 Mich 491; 146 NW2d 655 (1966).

Defendant further objects to the trial court's refusal to instruct the jury that if the plaintiff had failed to select the least dangerous course of action he was contributorily negligent as a matter of law. The requested instruction was not delivered because the trial judge found it argumentative, contrary to GCR 1963, 516.6(4). The instruction as requested incorrectly states the law of contributory negligence in that it refuses to recognize, or allow the jury to find, that two or more alternative courses of conduct may be reasonable. The law requires only that a person act as a "reasonably careful" person would, not that he select the optimum alternative in each and every circumstance. Thus, the error in refusing to deliver this instruction, if any, is harmless. *Jones v Michigan Racing Association,* 346 Mich 648; 78 NW2d 566 (1956).

Defendant next claims error in the trial court's giving of a so-called vigilance or *Gleason* instruction over defendant's objection. The instruction as delivered was taken substantially from *Gleason v Sutter,* 350 Mich 292, 297; 86 NW2d 288 (1957), a factually similar case in which the plaintiff was assisting the defendant in attempting to free a load of corn which had become jammed in the hopper to a corn crusher. There, as here, the plaintiff was given the defendant's assurances (although implicit) that to do so was safe. The *Glea-*

*son* court quoted with approval the following language from *Watkinson v Reichle,* 292 Mich 484, 487–488; 290 NW 877 (1940), which is the substance of the delivered instruction:

"[I]f the defendant, by his own act, has thrown the plaintiff off his guard, and given him reason to believe vigilance was not needed, the lack of such vigilance on the part of the plaintiff is no bar to his claim."

The defendant correctly observes that in *Gleason* and all the cases cited therein, there was evidence that the plaintiff acted at the defendant's direction or request. It contends that such a relationship is absent in the instant case and that, therefore, the instruction was inappropriate. We disagree. Whether or not plaintiff acted on his own is a factor in establishing the defendant's duty but not the plaintiff's contributory negligence. Contributory negligence results when the plaintiff has failed to honor his duty to himself to safeguard his own welfare. The nature of the defendant's duty to the plaintiff is immaterial on this issue, and the trial court correctly instructed on the plaintiff's duty elsewhere in his charge.

Defendant next contends that the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict either because the plaintiff had failed to establish that the defendant had breached any duty to the plaintiff, or because the defendant had established contributory negligence as a matter of law.

The duty owed the plaintiff by the defendant is a product of the relationship between the parties. Both agree that initially plaintiff was an invitee on the premises. Defendant, however, argues that when the plaintiff stepped into the hopper he did so without request or consent, thus exceeding the

scope of his invitation and reducing his status to that of a licensee or trespasser. We find ample evidence in the record upon which the jury could have concluded that the plaintiff remained an invitee up to the time of the accident, evidence including the conduct of defendant's agent, Mr. Johnson, who rendered assistance to plaintiff in freeing the shovel and who at no time objected to the plaintiff's actions.

In addition, we feel that breach of the defendant's duty is supported by the proofs to the extent that reasonable men could so conclude. Testimony presented by the plaintiff established that there had been a protective grate over the auger when installed but that it had later been removed by the defendant.

Plaintiff also presented expert testimony that the auger controls were inadequate and that the equipment was improperly maintained. From such evidence the jury could reasonably conclude that the defendant had breached the duty owed to either a licensee or invitee.

As to the defendant's contention that the plaintiff was as a matter of law contributorily negligent, we cannot agree. There is ample evidence in the record to support a finding that plaintiff acted with reasonable regard to his own safety, not the least of which was Mr. Johnson's assurances that the auger had been rendered inoperative.

Finally, defendant asks this Court to find the trial court committed error in denying its motion for *remittitur.* The remedy defendant seeks is not lightly given as the judgment is a product of jury deliberation and judicial discretion. That portion of the award which compensates the defendant for loss of earnings and medical expenses is relatively capable of mathematical computation. However, in

such a case no objective process will yield the value of a limb or the worth of freedom from pain. This Court will not substitute its judgment for that of the jury unless the jury verdict is "the result of prejudice, caprice, passion, partiality, sympathy, or kindred reasons rather than a result of the consideration of the evidence and actual existing conditions * * * ". *Stowers v Wolodzko,* 386 Mich 119, 141; 191 NW2d 355 (1971).

Defendant urges that the verdict was a product of sympathy towards the plaintiff and an abrogation of the jury's duty. We are unable to conclude that this was the case, nor can we say that the verdict is grossly excessive so as to "shock the judicial conscience" of the court. *Stevens v Edward C Levy Co,* 376 Mich 1; 135 NW2d 414 (1965).

Affirmed. Costs to plaintiffs.